[Civ. No. 68315. Second Dist., Div. Two. Sept. 15, 1983.]

STEPHEN C. S. CHEN, Plaintiff and Appellant, v.
FRED J. FLEMING, Defendant and Respondent.

**COUNSEL**

Stephen C. S. Chen, in pro. per., for Plaintiff and Appellant.

Lewis, D'Amato, Brisbois & Bisgaard, David B. Parker and Sherri Price-Peace for Defendant and Respondent.

## OPINION

**ROTH, P. J.**—Respondent Fred J. Fleming (Fleming), an attorney, was retained by certain clients in connection with their immigration status. Before Fleming had completed the task agreed to be undertaken, the clients elected to substitute appellant Stephen C. S. Chen (Chen), also an attorney, as their counsel in the matter. Chen first wrote to Fleming in February of 1980 advising him of the change and requesting that a $300 fee deposit be refunded. Having advanced costs and expended time respecting the case, Fleming declined to return the money. Chen, by further letter, then lowered his refund demand to $200 with the additional admonition that: "Your failure to comply with, or respond to, this demand will compel my client's taking further action to protect her interests, including referring the matter to the proper authorities for review."

Fleming, in response, wrote to the State Bar, reciting in part that:

"This office is in receipt of the original of the enclosed copy of a letter dated July 30, 1980 from Stephen C. S. Chen, attorney at law. As can be seen in this letter, I have been presented with what I can only consider a demand that I either return certain monies to a client or be reported 'to the proper authorities for review' (which, as you know, is a thinly disguised reference to the State Bar).

". . . . . . . . . . . . . . . . . . . . . . . .

"Mr. Chen received the documentation and had to have recognized that more than $300.00 work had already been performed before he received it.

". . . . . . . . . . . . . . . . . . . . . . . .

"While I will not raise the spectre of how this particular client happened to come into contact with Mr. Chen, I will certainly ask that the State Bar make inquiry into how much money Mr. Chen charged the client for his work.

". . . . . . . . . . . . . . . . . . . . . . . .

"In closing . . . I want to say, clearly and unequivocally, that I believe that we are faced with a serious ethical problem of misuse of the auspices of the State Bar. I am outraged that a fellow attorney would encourage the practice of what seems clearly to be threatening an attorney with the State Bar. I am outraged that a fellow attorney would foster a practice which degrades our profession in the eyes of the public."

A copy of this letter was sent to Chen.[1]

The State Bar, in turn, requested by letter that Chen respond to Fleming's complaint. That response, after otherwise setting out Chen's version of the controversy, asserted that: "The said paragraph, [to which Fleming took umbrage] in its entirety, was simply to put FLEMING on notice that shall he ignore the request for refund, CHEN would have no alternative but to take further proper steps to have [the clients'] claim adjudicated."

Apparently, satisfied the quarrel between the lawyers was insubstantial, the State Bar terminated its involvement in November of 1980.[2]

In August of 1981, on the basis of the foregoing, Chen sued Fleming. His April 19, 1982, second amended complaint for libel, slander, abuse of process, malicious prosecution, intentional infliction of severe emotional distress, and negligence, was like its predecessors, successfully generally demurred to by Fleming and the cause was dismissed. This appeal followed. We affirm.

 It is settled concerning Civil Code section 47, subdivision 2[3] that "The privilege conferred by the section is absolute and unaffected by the presence of malice. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 864-865 [100 Cal.Rptr. 656]; *Frisk* v. *Merrihew* (1974) 42 Cal.App.3d 319, 323 [116 Cal.Rptr. 781].) The absolute privilege extends to quasi-judicial

---

[1]Fleming also wrote directly to Chen, stating that:

"I am even more outraged that you would demean the legal profession by lending credence to your totally unfounded agreement with Mrs. Chien (if, in fact, she actually 'remains convinced' as you allege) that she is due any money at all in refund. Surely, had you been candid with her when you reviewed the file, you would have assured her that the money was earned.

"As a consequence of your letter, I am, myself, presenting the facts to the State Bar for their review. I believe the facts speak for themselves. I would suggest that you prepare an accounting of what you have done for the client on the case in question—and be prepared to support that accounting with a verified statement from Mrs. Chien as to what your charges were for those services."

[2]Its letter to this effect provided that:

"The matter in which Fred J. Fleming sought to have the State Bar proceed came regularly before this [investigation] committee at its meeting on October 28, 1980.

"The committee has carefully considered the statement of alleged facts brought to its attention and has concluded that the facts are insufficient to warrant disciplinary action by the State Bar.

"Very truly yours,

"PRELIMINARY INVESTIGATION PANEL FOR

"DISTRICT 7"

[3]"A privileged publication or broadcast is one made-

". . . . . . . . . . . . . . . . . . . . .

"2. In any . . . (2) judicial proceeding, or (3) in any other official proceeding authorized by law . . ."

as well as judicial proceedings. (*Ascherman* v. *Natanson, supra,* at p. 865.) [¶] Informal complaints received by a bar association which is empowered by law to initiate disciplinary procedures are as privileged as statements made during the course of formal disciplinary proceedings." (*Katz* v. *Rosen* (1975) 48 Cal.App.3d 1032, 1036 [121 Cal.Rptr. 853]; see also *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 732-733 [151 Cal.Rptr. 206]; *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 488-490 [104 Cal.Rptr. 650].)

■ Similarly, it is established that: "The privilege created by Civil Code section 47, though part of the statutory law dealing with defamation, has evolved through case law application into a rather broad protective device which attaches to various classes of persons and applies to types of publications and in types of actions not traditionally identified with the field of defamation.

"The initial departure from limiting the privilege to defamation actions came in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], where it was held that the privilege would serve to bar an action for disparagement of title based on the filing of a lis pendens.

". . . . . . . . . . . . . . . . . . . . . . .

"From that point application of the privilege has branched out in essentially two directions. First, it has been applied to defeat tort actions based on publications in protected proceedings but grounded on differing theories of liability, to wit, abuse of process (*Thornton* v. *Roden* (1966) 245 Cal.App.2d 80 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145]; *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289 [113 Cal.Rptr. 113]; *Umansky* v. *Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547]); intentional infliction of mental distress (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626 [99 Cal.Rptr. 393]; *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592]; *Pettit* v. *Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650]; *Scott* v. *McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277 [112 Cal.Rptr. 609]); inducing breach of contracts (*Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804 [42 Cal.Rptr. 314]; *Scott* v. *McDonnell Douglas Corp., supra*); interference with prospective economic advantage (*Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725 [151 Cal.Rptr. 206]); fraud and negligence (*Pettit* v. *Levy, supra*).

"Secondly, the privilege has been applied to publications which were private communications between parties and which communications were related not only to actual but potential court actions." (*Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121, 125-126 [185 Cal.Rptr. 92].)

■ And while "The nature of the privilege is such that absolute immunity attaches [only] if: 'the publication (1) was made in a judicial proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objects of the litigation; and (4) involved litigants or other participants authorized by law.' (*Bradley* v. *Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718].)" (*Brody* v. *Montalbano, supra,* 87 Cal.App.3d 725, 733), we have no doubt those requirements were satisfied here. (See *O'Neill* v. *Cunningham* (1981) 118 Cal.App.3d 466 [173 Cal.Rptr. 422]; cf. *Kinnamon* v. *Staitman & Snyder* (1977) 66 Cal.App.3d 893 [136 Cal.Rptr. 321]; see also *Rosenthall* v. *Irell & Manella, supra,* 135 Cal.App.3d 121, 127; *Portman* v. *George McDonald Law Corp.* (1979) 99 Cal.App.3d 988 [160 Cal.Rptr. 505].)

■ Still, Chen suggests, it is also the rule that even though "a communication may be absolutely privileged for the purposes of a defamation action [there is nothing to] prevent its being an element of an action for malicious prosecution" (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]), such that, at least, his cause of action framed on that theory must remain intact. The claim is answered, however, by the corollary to that rule that "A mere investigation which does not lead to the initiation of proceedings before an [official body] having the power to take action adversely affecting legally protected interests of the accused is not a sufficient basis upon which to found a malicious prosecution action . . . ." (*Brody* v. *Montalbano, supra,* 87 Cal.App.3d at p. 736; see also *Werner* v. *Hearst Publications, Inc.* (1944) 65 Cal.App.2d 667 [151 P.2d 308].)

Finally, Chen maintains that in any event Civil Code section 47, subdivision 2 is unconstitutional, based on the proscription of article I, section 19 of the California Constitution that "Private property may be taken . . . for public use only when just compensation . . . has first been paid to . . . the owner," the theory being that his action, otherwise viable and which constitutes personal property encompassed by the constitutional provision, has been taken from him without compensation in order to advance the public policy inhering in section 47, subdivision 2. We are satisfied that the contention, raised for the first time here and unsupported by any citation to authority, is sufficiently specious on its face as to make unnecessary any further discussion respecting it.

The order appealed from is affirmed.

Compton, J., and Gates, J., concurred.