[No. A022497. First Dist., Div. Five. Mar. 14, 1985.]

BETSY WARREN LEBBOS, Plaintiff and Appellant, v.
THE STATE BAR OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Betsy Warren Lebbos, in pro. per., Steven A. Fabbro and Melvin M. Belli, Sr., for Plaintiff and Appellant.

Herbert M. Rosenthal, Marie M. Moffat, Robert M. Sweet, John B. Hook, Michael P. McKisson and Long & Levit for Defendants and Respondents.

**OPINION**

**KING, J.**—In this case we hold that the forwarding of complaints of clients against a lawyer by a county bar association to the State Bar of California and the State Bar's investigation of those complaints does not violate the civil rights of the lawyer. The county bar association and its officers, and the State Bar and its employees who investigate the complaints, are pro-

tected by the absolute privilege granted by Civil Code section 47, subdivision 2. Additionally, we hold that an investigation of such complaints by the State Bar does not constitute a prosecution and is insufficient to constitute the basis for a cause of action for malicious prosecution.

Plaintiff Betsy Warren Lebbos appeals from judgments in favor of defendants the State Bar of California (State Bar), its employees Michael Conklin, Lily Barry, and David Frey (State Bar defendants), the Santa Clara County Bar Association (SCCBA), and its officers Fred Wool, Gerald Rosenblum, Phillip Hammer, and Robert Moore (SCCBA defendants). The judgments were entered after the trial court sustained defendants' demurrers to Lebbos' third amended complaint without leave to amend. We affirm the judgments.

■■ ■■■■ Lebbos is an attorney licensed to practice law in California.[1] She conducted a family law practice in Santa Clara County.

During 1978 and 1979 the SCCBA received approximately 24 complaints from clients and former clients of Lebbos, most of which involved fee disputes. The SCCBA forwarded the complaints to the State Bar without any direct requests to do so by the complainants and informed the complainants of its action.

While investigating those complaints the State Bar contacted the complainants to interview them. Lebbos claims that in the course of these interviews the State Bar informed the complainants that she was being investigated for possible disciplinary violations and advised them not to pay fees still owing to her.

After an initial investigation the State Bar held an informal hearing before a referee of the State Bar on October 2, 1979. Lebbos was sent a notice of the hearing. She appeared and was represented by counsel. At the conclusion of the hearing Lebbos was exonerated by the hearing referee of any allegations of misconduct in connection with the complaints reviewed at that time. No notice to show cause was issued and no formal disciplinary hearing was held. After the 1979 hearing three other complaints against Lebbos alleging disciplinary violations were investigated and dismissed by the State Bar without issuance of an order to show cause.

Lebbos filed her complaint against the defendants in March 1980 for damages she alleged resulted from the acts of the SCCBA and the State Bar

---

[1]For the purposes of this appeal the "factual record" consists of the well-pleaded facts of the complaint, as well as those facts of which a court must or may take judicial notice. (*Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357]; *Weil* v. *Barthel* (1955) 45 Cal.2d 835, 837 [291 P.2d 30].)

described above. She never served defendants with copies of this complaint, but filed first and second amended complaints in August 1980 and July 1982, respectively. Defendants' demurrers to each of these were sustained with leave to amend by the San Francisco Superior Court.

On January 21, 1983, Lebbos filed her third amended complaint containing essentially the same allegations and claims as the second amended complaint. Lebbos lists eight causes of action: (1) violation of her civil rights under 42 United States Code section 1983; (2) violation of mandatory duty of confidentiality under Government Code section 815.6; (3) malicious prosecution; (4) abuse of process; (5) interference with existing contractual relations; (6) interference with prospective economic advantage; (7) intentional infliction of emotional distress; and (8) negligence.

At a hearing on March 18, 1983, the defendants' demurrers to the third amended complaint were sustained without leave to amend. Orders sustaining the demurrers without leave to amend were filed, and judgments were entered in favor of defendants.

I.

Lebbos' first cause of action is brought under 42 United States Code section 1983.[2] Lebbos alleges that all of the defendants, acting individually or in concert, deprived her of rights guaranteed her under the federal and state Constitutions, including equal protection, due process, freedom of speech and of association, access to the courts, and privacy. Lebbos fails, however, to state sufficient facts to constitute a cause of action for violation of 42 United States Code section 1983 against either the State Bar or the SCCBA.

█ The terms of section 1983 provide two elements which a plaintiff must plead and prove prior to recovery: (1) defendants must have deprived plaintiff of a right secured by the Constitution and laws of the United States, and (2) defendants must have been acting "under color of" state law at the time the conduct complained of occurred. (*Adickes* v. *Kress & Co.* (1970) 398 U.S. 144, 150 [26 L.Ed.2d 142, 150, 90 S.Ct. 1598]; *Kanarek* v. *Davidson* (1978) 85 Cal.App.3d 341, 344 [148 Cal.Rptr. 86].) Lebbos failed to allege either of these elements with sufficient particularity in her third amended complaint to state a cause of action against the SCCBA.

---

[2]Section 1983 of 42 United States Code provides in part: "Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory, subjects or causes to be subjected any citizen of United States . . . to deprivation of any right, privileges or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

■ The United States Supreme Court has defined "under color of" state law as "misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." (*United States* v. *Classic* (1941) 313 U.S. 299, 326 [85 L.Ed. 1368, 1383, 61 S.Ct. 1031].) ■ Lebbos has not alleged any specific facts indicating the SCCBA was "clothed with the authority of state law." On the contrary the facts as pleaded by Lebbos generally contradict the conclusion that the SCCBA acted as anything except a private entity. The only allegation of specific action Lebbos makes against the SCCBA and SCCBA defendants is that they forwarded complaints against her to the State Bar and informed the complainants of their actions. She acknowledges that the SCCBA is a private nonprofit corporation, incorporated under the laws of California. Incorporation of an organization according to the laws of a state does not alone amount to state action, and is not sufficient to clothe all other action taken by the organization with the authority of state law for purposes of 42 United States Code section 1983. (*Jackson* v. *Metropolitan Edison Co.* (1974) 419 U.S. 345, 350-352 [42 L.Ed.2d 477, 483-485, 95 S.Ct. 449] [privately owned utility company held not acting under color of state law even though licensed and heavily regulated by the state].)

■ Lebbos' only other attempt to show that the SCCBA acted "under color of" state law appears to be several conclusionary allegations that the SCCBA "conspired" with the State Bar in order to deprive her of her rights. General claims of this kind are insufficient, however. "With special reference to the Civil Rights Act, the courts have established precise requirements of conspiracy pleadings. Much more than vague and conclusionary allegations is required. A plaintiff must allege with particularity facts in the form of specific overt acts." (*Taylor* v. *Mitzel* (1978) 82 Cal.App.3d 665, 673 [147 Cal.Rptr. 323]; see also cases cited therein.)

Here Lebbos does not fulfill the requirements for conspiracy outlined in *Taylor.* She does not allege any "specific facts showing meetings, communications, correspondence, or any indicia of conspiracy to commit acts designed and intended to deprive plaintiffs of any rights." (*Id.,* at p. 674.) The only specific contacts between the SCCBA and the State Bar Lebbos alleges were that the SCCBA forwarded the complaints to the State Bar "for prosecution." A private entity or individual does not conspire with a state official merely by asking a state official to take some action. (*Tarkowski* v. *Robert Bartlett Realty Co.* (7th Cir. 1980) 644 F.2d 1204, 1208.)

■ The SCCBA and the SCCBA defendants argue persuasively that public policy and the law suggest "that the causes of action for civil rights violations [should] be dismissed. If they are allowed to stand, then any professional, such as a physician, real estate broker or attorney, who is the

object of an investigation triggered by a private complaint, could initiate a civil rights cause of action against the complainant. To allow such an action to progress beyond the pleading stage would severely interfere with the private citizen's right and duty to petition the government." Since Lebbos' complaint fails to state the elements necessary for a cause of action under 42 United States Code section 1983, the trial court properly sustained the SCCBA's demurrer as to that cause of action.

■ Lebbos contends that she correctly stated facts sufficient to constitute a cause of action under 42 United States Code section 1983 against the State Bar and the State Bar defendants. She claims that the State Bar enjoys no quasi-judicial immunity, and even if such immunity existed it does not apply to actions the State Bar committed which were outside the scope of its prosecutorial authority. Lebbos implies that 42 United States Code section 1983 may not allow any immunities. Case law does not support this theory.[3]

In *Clark* v. *State of Washington* (9th Cir. 1966) 366 F.2d 678, the plaintiff, an attorney, brought suit against the State Bar for violation of 42 United States Code section 1983. Clark had been investigated and tried for disciplinary violations by the State Bar, and on the bar's recommendation he had been disbarred. The Ninth Circuit upheld the dismissal of Clark's claims against the State Bar, declaring, "A prosecuting attorney, as a quasi-judicial officer, enjoys immunity from suit under the Civil Rights Act insofar as his prosecuting functions are concerned. The reasoning behind such a rule was suggested in Robichaud v. Ronan, 9th Cir., [1965] 351 F.2d 533, 536, where this court stated that '[t]he key to the immunity previously held to be protective to the prosecuting attorney is that the acts, alleged to have been wrongful, were committed by the office in the performance of an integral part of the judicial process.' As an arm of the Washington Supreme Court in connection with disciplinary proceedings, the Bar Association is an 'integral part of the judicial process' and is therefore entitled to the same immunity which is afforded to prosecuting attorneys in that state." (*Id.*, at p. 681; see also *Kissell* v. *Breskow* (7th Cir. 1978) 579 F.2d 425, 430; *Taylor* v. *Mitzel, supra,* 82 Cal.App.3d at pp. 665, 670-671; *Silver* v. *Dickson* (9th Cir. 1968) 403 F.2d 642, 643, cert. den. 394 U.S. 990 [22 L.Ed.2d 765, 89 S.Ct. 1477]; *Sykes* v. *State of California (Dept. of Motor Vehicles)* (9th Cir. 1974) 497 F.2d 197, 201; *Greene* v. *Zank* (1984) 158 Cal.App.3d 497, 507 [204 Cal.Rptr. 770].)

---

[3]The United States Supreme Court has recognized immunities from prosecution under section 1983 in situations such as: *Tenney* v. *Brandhove* (1951) 341 U.S. 367 [95 L.Ed. 1019, 71 S.Ct. 783] [absolute immunity for legislators from liability for their legislative acts]; *Pierson* v. *Ray* (1967) 386 U.S. 547 [18 L.Ed.2d 288, 87 S.Ct. 1213] [absolute immunity for judges from liability for their judicial acts]; *Imbler* v. *Pachtman* (1976) 424 U.S. 409 [47 L.Ed.2d 128, 96 S.Ct. 984] [immunity for prosecutors from liability for initiating a prosecution and presenting the state's case]; and cases following each.

In the instant case, according to *Clark,* the State Bar and its officers should be entitled to the same quasi-judicial immunity from liability under 42 United States Code section 1983 as other prosecutors enjoy for acts within their prosecutorial authority. The issue is whether the State Bar's investigation of Lebbos, including contacting and interviewing the complainants, and informing them that an investigation of Lebbos was underway, was within the scope of the State Bar's prosecutorial authority.

The United States Supreme Court has recognized that the duties of a prosecutor which are protected by quasi-judicial immunity extend beyond conducting a trial or hearing *to actions that must be taken prior to the initiation of a prosecution,* and those outside the courtroom. (*Imbler* v. *Pachtman, supra,* 424 U.S. at p. 431, fn. 33 [47 L.Ed.2d 128, 144].) A prosecutor's investigative activities including interviewing witnesses and obtaining documents, are part of the duties of a prosecutor, and immune from liability under section 1983. (*Cook* v. *Houston Post* (5th Cir. 1980) 616 F.2d 791, 793.) In *Kissell* v. *Breskow, supra,* 579 F.2d at page 430, the court concluded that Breskow, the executive secretary of the Disciplinary Commission of Indiana, was entitled to quasi-judicial immunity for his prosecutorial duties, which included investigating attorney misconduct, presenting recommendations to the disciplinary commission, and prosecuting cases of attorney misconduct.

*Clark, Imbler, Kissell* and the other cases discussed above confirm that in carrying out its duty to investigate and prosecute attorney misconduct, the State Bar can conduct investigations of any complaints it receives to discover whether any disciplinary violations have occurred. Naturally in investigating the validity and the gravity of the complaints the State Bar will have to contact and interview the complainants. Otherwise, it would not be fulfilling its public responsibility. It is evident that while conducting such interviews the fact that the State Bar is investigating the attorney who was the subject of the complaint cannot be concealed from the complainant.

The actions by the State Bar and the State Bar defendants in this case, in investigating the original 24 complaints and the 3 which were received after the initial hearing, fall squarely within the prosecutorial authority of the State Bar, and therefore the defendants enjoy immunity from prosecution for these acts under 42 United States Code section 1983. The State Bar's demurrer to the civil rights action was properly sustained.

## II.

Lebbos contends that the absolute privilege granted by Civil Code section 47, subdivision 2, does not protect either the SCCBA or the State Bar in

this case because the defendants' actions were not reasonably related to an "official proceeding." This argument lacks merit.

Civil Code section 47, subdivision 2, provides in pertinent part: "A privileged publication or broadcast is one made . . . [¶] 2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding, or (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by writ of mandate]."

■ It is well settled that the privilege granted by section 47, subdivision 2, is absolute and unaffected by the presence of malice. (*Ascherman* v. *Natanson* (1972) 23 Cal.App.3d 861, 864-865 [100 Cal.Rptr. 656]; *Tiedemann* v. *Superior Court* (1978) 83 Cal.App.3d 918, 924 [148 Cal.Rptr. 242]; *Chen* v. *Fleming* (1983) 147 Cal.App.3d 36, 39 [194 Cal.Rptr. 913]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375, 379 [295 P.2d 405].) ■ The absolute privilege extends to quasi-judicial as well as judicial proceedings. (*Ascherman* v. *Natanson, supra,* 23 Cal.App.3d at p. 865.)

■ ■ ■ Courts have recognized that this privilege, which on its face applies to actions for defamation, has been extended to bar *other tort actions based on publications in protected proceedings* including: abuse of process; intentional infliction of emotional distress; inducing breach of contracts; interference with prospective economic advantage; and fraud and negligence.[4] (*Rosenthal* v. *Irell & Manella* (1982) 135 Cal.App.3d 121, 125 [185 Cal.Rptr. 92]; and cases cited therein.)

---

[4]*Rosenthal* does not discuss the effect of Civil Code section 47, subdivision 2, on actions for violation of mandatory duty under Government Code section 815.6. Section 815.6 states, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty . . . ." Thus, section 815.6 merely extends *liability in tort* to a public entity for failing to carry out official duties. Therefore, since Civil Code section 47, subdivision 2, has been applied to provide immunity from a variety of *tort actions based on publications in protected proceedings* it can be inferred that section 47, subdivision 2, bars actions for violation of mandatory duty where the "violation" consisted of communications in the course of a disciplinary investigation which is a quasi-judicial proceeding and consequently protected. The application of absolute privilege to this situation is further supported by Government Code section 815, subdivision (b), which specifies that any liability established by section 815 as a whole "*is subject to any immunity of the public entity provided by statute,* including this part, and is subject to any defenses that would be available to the public entity if it were a private person." (Italics added.)

Lebbos failed to state a cause of action for violation of Government Code section 815.6 for additional reasons. Her claim against the SCCBA fails because section 815.6 applies only to governmental entitles and public officials. Lebbos acknowledges that the SCCBA is a private nonprofit corporation. She alleges no facts suggesting that the SCCBA was a public entity or that it acted in any way under color of state law.

Lebbos' claim against the State Bar is also unfounded because both logic *and* the Rules of Procedure of the State Bar require that State Bar personnel conducting disciplinary investigations must be allowed to contact complainants and to inform the complainants of the results of such investigations. (Rules Proc. of State Bar, rules 506, 509.)

 Absolute immunity provided by Civil Code section 47, subdivision 2, attaches if the following conditions are satisfied: the publication, (1) was made in an official proceeding; (2) had some connection or logical relation to the action; (3) was made to achieve the objectives of the proceeding; and (4) involved litigants or other participants authorized by law. (*Chen* v. *Fleming, supra*, 147 Cal.App.3d at p. 41.)

In the instant case all of the defendants satisfied the conditions for the protection of absolute privilege regarding their actions in initiating and pursuing an investigation of Lebbos.

 The specific factual allegations against the SCCBA defendants are that they forwarded client complaints to the State Bar, that they informed the complainants that they had done so, and that they did each of these acts with malice and the intent to injure Lebbos. These allegations are included by reference in every cause of action asserted by Lebbos. All of her claims of injury stem from these acts and the subsequent investigative proceedings taken by the State Bar.

Informal complaints to the State Bar are part of "official proceedings" protected by Civil Code section 47, subdivision 2, thus satisfying the first condition required by *Chen*. (*Chen* v. *Fleming, supra,* 147 Cal.App.3d at p. 40; *Katz* v. *Rosen* (1975) 48 Cal.App.3d 1032, 1036 [121 Cal.Rptr. 853]; *Tiedemann* v. *Superior Court, supra,* 83 Cal.App.3d at pp. 924-925.) Second, the SCCBA's alleged acts, forwarding the complaints to the State Bar and informing the complainants that it had done so, were each logically related to the initiation of an investigation by the State Bar. Moreover, any communication with an official agency designed to prompt investigation by that agency is absolutely privileged. (*Long* v. *Pinto* (1981) 126 Cal.App.3d 946, 948 [179 Cal.Rptr. 182].) Third, two of the objectives of an investigation for possible disciplinary violations, to determine whether there was sufficient evidence to issue an order to show cause and to provide "a safety valve for the public" to register complaints, were served by providing the State Bar with information in the complaints and by informing the complainants of the actions taken in response to the complaints. (Rules Proc. of State Bar, rules 508, 509; *Chronicle Pub. Co.* v. *Superior Court* (1960) 54 Cal.2d 548, 567-568 [7 Cal.Rptr. 109, 354 P.2d 637]; *Stanwyck* v. *Horne* (1983) 146 Cal.App.3d 450, 461 [194 Cal.Rptr. 228].)

 Finally, it is well settled that absolute privilege extends in quasi-judicial proceedings to preliminary interviews and conversations with potential witnesses. (*Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 490-491 [104 Cal.Rptr. 650]; *Ascherman* v. *Natanson, supra,* 23 Cal.App.3d at p. 865.) In a State Bar disciplinary proceeding complainants are

potential witnesses. The SCCBA communicated only with the State Bar, the disciplinary body involved in the investigation of attorney misconduct, and the complainants who are potential witnesses in any such action. All four conditions listed in *Chen* are satisfied regarding SCCBA.

Even if the SCCBA acted maliciously in sending the complaints to the State Bar or informing the clients, such actions remain privileged. (*Ascherman* v. *Natanson, supra,* 23 Cal.App.3d at pp. 864-865.) On the basis of the absolute immunity conferred by Civil Code section 47, subdivision 2, the trial court properly sustained the SCCBA's demurrer to the following causes of action: (2) violation of mandatory duty;[5] (4) abuse of process; (5) interference with contractual relations; (6) interference with prospective economic advantage; (7) intentional infliction of emotional distress; and (8) negligence. (*Rosenthal* v. *Irell & Manella, supra,* 135 Cal.App.3d at p. 125.)

 The specific factual allegations against the State Bar defendants are that after receiving complaints about Lebbos they communicated directly with the complainants, as part of a preliminary investigation of the complaints, advised the complainants not to pay fees still owing to Lebbos, and did each of these acts with malice and the intent to injure Lebbos.

Applying the analysis used in *Chen* (to determine when absolute immunity attaches) to the actions of the State Bar reveals: (1) that State Bar investigations and hearings are "official proceedings" within the meaning of section 47, subdivision 2; (2) that the contacting and interviewing of the complainants regarding their complaints was logically related to the completion of the investigation; (3) that the communications with the complainants were made to achieve two of the objectives of a preliminary investigation of a disciplinary matter; and (4) that the complainants, as potential witnesses were participants authorized by law. Since the conditions are met, the actions of the State Bar in conducting an investigation, and all communications with the complainants, regardless of any malicious intent, are absolutely privileged under Civil Code section 47, subdivision 2. ██ ██ ██ ██ (*Chen* v. *Fleming, supra,* 147 Cal.App.3d at p. 41; *Ascherman* v. *Natanson, supra,* 23 Cal.App.3d at pp. 864-865.)[6]

---

[5]For additional discussion of defendants' immunity from prosecution for *violation of mandatory duty,* see footnote 4, *ante.*

[6]Additionally, common law judicial and quasi-judicial immunity has been held to bar suits for damages against judges and others serving a judicial function, *even when the complained of actions were libelous or were made in excess of the judge's jurisdiction,* as long as there is not a clear absence of all jurisdiction over the subject matter. (*Lewis* v. *Linn* (1962) 209 Cal.App.3d 394, 397-398 [26 Cal.Rptr. 6]; *Greene* v. *Zank, supra,* 158 Cal.App.3d at p. 507.) This common law immunity extends to public prosecutors. (*Pearson* v. *Reed* (1935) 6 Cal.App.2d 277, 285-288 [44 P.2d 592].) The same immunity reasonably should protect

██ The trial court, therefore, properly sustained the State Bar's demurrer to the following causes of action: (2) violation of mandatory duty;[7] (4) abuse of process; (5) interference with existing contractual relations; (6) interference with prospective economic advantage; (7) intentional infliction of emotional distress; and (8) negligence. (*Rosenthal* v. *Irell & Manella, supra,* 135 Cal.App.3d at p. 125.)

### III.

██ Lebbos argues that her third amended complaint states a cause of action for malicious prosecution against both the SCCBA and the State Bar. Her complaint, however, does not state a prima facie cause of action for malicious prosecution since none of the proceedings which occurred constituted "prosecution" within the meaning of a malicious prosecution action.

Investigations which do not lead to initiation of proceedings before an official body or administrative board having the power to take action adversely affecting legally protected interests of the accused are not a sufficient basis upon which to found an action for malicious prosecution. (*Chen* v. *Fleming, supra,* 147 Cal.App.3d at p. 41; *Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 58 [138 Cal.Rptr. 540].)

The State Bar investigation and proceedings to which Lebbos objected were informal. (Rules Proc. of State Bar, (Rule) rule 509, subd. (c).) They were part of an investigation conducted by an investigation referee for the investigation department of the State Bar. (Rules 2.17, 2.18.) The purpose of such an investigation is to determine whether there is sufficient evidence to issue an order to show cause in attorney disciplinary proceedings. (Rules 502, 508, 509.) The referee may hold an informal investigation hearing to help make this determination. (Rule 509, subd. (a).) The referee has the authority to terminate the investigation for lack of evidence, or to issue an order to show cause. (Rule 508, 509.) The only punitive action an investigation referee can take is to issue a nonpublic admonition which does not constitute the imposition of discipline. (Rule 415.)

Formal proceedings against a member of the State Bar are only commenced upon the issuance of an order to show cause. (Rules 510, 550.) Only after formal disciplinary proceedings are concluded can the State Bar impose any sanctions, and only the California Supreme Court can impose

---

officers of the State Bar in the execution of their prosecutorial duties even if they acted maliciously or in excess of their jurisdiction, since the State Bar has basic jurisdiction over attorney disciplinary matters.

[7]See footnotes 4 and 5, *ante.*

the harshest sanctions, suspension or disbarment of an attorney. (Bus. & Prof. Code, § 6078.)

In the instant case Lebbos alleges that the investigation referee completely exonerated her at the completion of the hearing. No order to show cause was issued, and therefore no formal proceedings were initiated. Since the investigations of the complaints against Lebbos ended in an investigatory stage and never led to proceedings before any body which had "the power to take action adversely affecting [her] legally protected interests," there was no basis for an action for malicious prosecution.[8] (*Chen* v. *Fleming, supra,* 147 Cal.App.3d at p. 41; *Imig* v. *Ferrar, supra,* 70 Cal.App.3d at p. 58.) The superior court properly sustained the demurrers of the SCCBA and the State Bar to the action for malicious prosecution.

This appeal borders on the frivolous. The allegations of Lebbos' third amendment complaint establish that a county bar association and its officers, upon receiving complaints from clients about a lawyer practicing in that county, forwarded the complaints to the State Bar. This is exactly what the county bar association should have done. Upon receipt of the complaints, the State Bar and its employees investigated the complaints. This is exactly what the State Bar should have done.

The judgments are affirmed.

Low, P. J., and Poché, J.,* concurred.

Haning, J., deeming himself disqualified, did not participate.

Appellant's petition for review by the Supreme Court was denied May 22, 1985.

---

[8]It is not contradictory to grant defendants the absolute privilege which attaches to official proceedings while denying that there were official proceedings for the purposes of malicious prosecution. In *Imig* v. *Ferrar, supra,* 70 Cal.App.3d at page 58, the court distinguished the two situations stating, "The privilege has been extended to publications *preliminary to* official proceedings, which are intended by the author to initiate official action. However, to justify recovery for malicious prosecution, there must actually have been 'the initiation of civil proceedings against another before an administrative board which has power to take action adversely affecting the legally protected interests of the other' and, of course, the favorable termination of those proceedings. If the publication does not lead the official agency to initiate such proceedings, the plaintiff has not suffered the type of injury for which malicious prosecution lies."

*Assigned by the Chairperson of the Judicial Council.