Filed 12/21/21  Renaissance Kithchen, Bath & Flooring v. Szmczyk CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RENAISSANCE KITHCHEN, BATH & FLOORING, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RHEIA SZYMCZYK et al., <br><br> Defendants and Appellants. | G059557 <br><br> (Super. Ct. No. 30-2020-01135422) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed in part, reversed in part, and remanded.

Law Offices of Andrew D. Weiss and Andrew D. Weiss for Defendants and Appellants.

Law Office of Mainak D'Attaray, Mainak D'Attaray; Law Offices of Morteza Aghavali and Morteza Aghavali for Plaintiff and Respondent.

\*          \*          \*

INTRODUCTION

After a falling out between the parties to a home improvement contract, homeowners Rheia Szymczyk and David Szymczyk (the Szymczyks) filed a complaint against the contractor, Renaissance Kithchen, Bath & Flooring, Inc. (Renaissance)[1] with Contractors' State License Board (the License Board). They also filed an affidavit of loss against Renaissance's contractor's bond issued by Philadelphia Indemnity Insurance Company (Philadelphia). Renaissance sued the Szymczyks claiming, in part, that the License Board complaint and the affidavit of loss caused it damage. The Szymczyks filed a special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure section 425.16.[2] The trial court granted the motion in part and denied it in part; the Szymczyks appealed.

We conclude the allegations relating to the License Board complaint arose from protected activity and lacked minimal merit. Those allegations must be stricken from Renaissance's complaint. However, the allegations relating to the affidavit of loss did not arise from protected activity and therefore are not subject to the anti-SLAPP motion. Therefore, we (1) affirm the trial court's order denying the anti-SLAPP motion as to all references to the affidavit of loss; (2) affirm the trial court's order granting the anti-SLAPP motion as to the references to the License Board complaint in the fifth and sixth causes of action; (3) reverse the trial court's order denying the anti-SLAPP motion as to the references to the License Board complaint in the third, fourth, and seventh causes of action; and (4) remand the matter with directions to strike all references to the License Board complaint from the third, fourth, fifth, sixth, and seventh causes of action.

---

[1] The complaint uses this spelling of Renaissance's name, which apparently is also used in its articles of incorporation.

[2] "SLAPP" is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57.)

The Szymczyks requested attorney fees and costs from the trial court as a partially prevailing party.  The trial court did not address that request.  On remand, the trial court shall determine how much, if any, of the fees and costs the Szymczyks are entitled to recover.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

By means of three separate written contracts signed on July 20, 2019, the Szymczyks contracted with Renaissance to perform home improvement work at the Szymczyks' house in Lake Forest.  The total contracted cost of the improvements was $54,520.  The Szymczyks paid Renaissance a total deposit of $3,000, and separately paid $18,800 for materials.  An amendment to the contract was signed September 13, 2019.

Disagreements arose between the parties.  On November 11, 2019, Mehran Ghassemi, on behalf of Renaissance, sent Rheia Szymczyk an e-mail stating:  "I am no longer interested to continue working for you."  The e-mail claimed the Szymczyks had made Renaissance's performance impossible by continually interfering with Renaissance, modifying the agreement, and demanding that Renaissance perform work not specified in the contract.  Rheia Szymczyk, replying by e-mail, asked Ghassemi to specify how the Szymczyks had interfered and demanded an apology.  Ghassemi sent another e-mail informing Rheia Szymczyk that Renaissance would like to finish the job.  On November 14, Rheia Szymczyk e-mailed the following message:  "As of 11/11/2019, your permission to enter the property . . . is revoked.  All of your property has been removed from the interior of the house and located outside.  You may come to the property for one day to collect your belong[ing]s and leave the house key in the mail box.  Thank you."

The Szymczyks submitted an affidavit of loss to Philadelphia seeking to collect on the contractor's bond.[3] Rheia Szymczyk's declaration in support of the anti-SLAPP motion stated: "I submitted an Affidavit of Loss to Philadelphia . . . seeking to collect $15,000.00 from the contractor's bond issued by Philadelphia. The Affidavit of Loss was submitted electronically on November 11, 2019,[4] and by mail on December 14, 2019. Philadelphia notified me it had received the Affidavit of Loss and assigned a claim number. However, Philadelphia has not agreed to pay any part of the claim and had not notified me of any rejection of the claim. The Affidavit of Loss was made in contemplation of litigation against Philadelphia if Philadelphia failed to pay me the face amount of the bond." (Some capitalization omitted.) Renaissance submitted a response and supporting documents to Philadelphia on January 15, 2020. The Szymczyks also filed a complaint against Renaissance with the License Board.

On March 2, 2020, Renaissance filed a complaint in the superior court against the Szymczyks for, inter alia, negligent misrepresentation, intentional misrepresentation, abuse of process, business defamation, and intentional interference with prospective economic advantage.[5] Neither Philadelphia nor the License Board had completed its review of the Szymczyks' claims as of that date. On March 17, 2020, the Szymczyks filed a cross-complaint against Renaissance and Philadelphia.

The Szymczyks filed an anti-SLAPP motion on May 26, 2020. After briefing and a hearing, the trial court granted the motion in part and struck the causes of

---

[3] Rheia Szymczyk's declaration authenticating the affidavit of loss states that the Szymczyks were seeking to collect $15,000 on the bond, although the affidavit itself demands $21,800. The parties' briefs indicate the face amount of the bond is $15,000.

[4] The reply to the motion to strike says the affidavit of loss was first filed "on or about November 19, 2019."

[5] Renaissance also asserted causes of action for breach of contract, breach of the duty of good faith and fair dealing, and quantum meruit/restitution. These causes of action are not at issue in the anti-SLAPP motion.

4

action for abuse of process and business defamation, but only to the extent those causes of action were based on the Szymczyks' complaint to the License Board. The court found that the claims regarding the License Board complaint involved the Szymczyks' petitioning activity. The trial court denied the remainder of the anti-SLAPP motion because the claims "did not arise out of any acts protected by the anti-SLAPP statute." As to the minimal merits, the trial court stated at the hearing that if it "were obliged to go to step two," it would "give the benefit of the doubt to the Plaintiff and deny the anti-SLAPP motion" because the analysis required of the trial court by the minimal merits prong "exceed[s] my poor powers to apply them." The minute order nevertheless granted the motion as to the fifth and sixth causes of action regarding the License Board complaint; we can infer that the trial court made a determination of minimal merit of those causes of action.

Although the trial court invited additional briefing on the Szymczyks' request for attorney fees, it never ruled on that request.

The Szymczyks filed a notice of appeal.

DISCUSSION

I.

*STANDARD OF REVIEW*

We review an order granting or denying an anti-SLAPP motion de novo. "We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' [Citation.] However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.'" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

An anti-SLAPP motion may be directed to specific allegations of protected activity which constitute claims for relief but do not constitute an entire cause of action as pleaded. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 393.)

## II.

### *DO THE CHALLENGED ALLEGATIONS ARISE FROM PROTECTED ACTIVITY?*

The Szymczyks contend that the relevant causes of action should be stricken in their entirety because they arise from acts in furtherance of the Szymczyks' rights of petition and free speech. The Szymczyks rely on subdivision (e)(1) and (2) of Code of Civil Procedure section 425.16: "'[A]ct in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, [or] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (*Id.*, § 425.16, subd. (e)(1), (2).) The Szymczyks contend that the License Board complaint was a written statement made in connection with an official proceeding authorized by law, and that the affidavit of loss was a covered prelitigation communication.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the

6

plaintiff's cause of action must itself have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citation.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra*, 2 Cal.5th at pp. 1062-1063.)

A.

*Statements in the License Board Complaint*

The minute order struck references to the License Board complaint from the fifth cause of action (abuse of process) and the sixth cause of action (business defamation). The minute order did not address references to the License Board complaint in the third, fourth, and seventh causes of action for negligent and intentional misrepresentation and interference with economic advantage.

The License Board is an administrative agency of the State of California and a part of the California Department of Consumer Affairs. (Bus. & Prof. Code, § 7000.5, subd. (a); see *Contractors' State License Board v. Superior Court* (1960) 187 Cal.App.2d 557, 560.) The License Board is "charged by law with the duty of investigating the actions of any contractor within the state and of taking disciplinary action against any such contractor should its investigation disclose reason to believe that the contractor has committed any acts which, under the provisions of the statute, are

7

made grounds for disciplinary action." (*Contractors' State License Board v. Superior Court, supra*, at p. 560.)  In *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 198, the California Supreme Court held that a hospital's peer review committee's actions constituted an "'official proceeding'" for purposes of Code of Civil Procedure section 425.16.  Based on these authorities, we conclude the License Board complaint was an official proceeding for purposes of the anti-SLAPP motion.

We next turn to whether the Szymczyks' activity giving rise to their liability under the relevant causes of action constitutes protected speech.  In the causes of action for intentional and negligent misrepresentation, the alleged misstatements by the Szymczyks in the License Board complaint form the basis for the claims.  Renaissance alleges it was harmed as a result of the Szymczyks' misrepresentations.  In the fourth cause of action, Renaissance alleged the Szymczyks made the misrepresentations in the License Board complaint "to obtain unjust benefits and to intentionally and negatively affect [Renaissance]'s contractor's licenses."

The fifth cause of action alleges abuse of process; the License Board complaint directly forms the basis for that cause of action.  Similarly, the License Board complaint forms the basis for the sixth cause of action, which alleges the filing of the License Board complaint resulted in business defamation to Renaissance.

In the seventh cause of action, Renaissance alleges (1) the Szymczyks made false statements in the License Board complaint and filed false claims with the intent to disrupt Renaissance's business relationships with potential and existing customers and (2) those relationships were in fact disrupted.  This cause of action also alleged that the Szymczyks made the false statements and false claims in the License Board complaint "to obtain unjust benefits and to intentionally and negatively affect [Renaissance]'s contractor's licenses."

We conclude that all references to the License Board complaint in the third, fourth, fifth, sixth, and seventh causes of action arose from the Szymczyks' protected activity and, therefore, are subject to being stricken under the anti-SLAPP statute.

B.

*Statements in the Affidavit of Loss*

The Szymczyks contend that the affidavit of loss submitted to Philadelphia is a prelitigation communication and therefore arises from protected activity.

Communications made before litigation is commenced but that are related to the litigation are covered by the litigation privilege. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) Protected communications include those "'preparatory to or in anticipation of the bringing of an action.'" (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1024.) "A prelitigation communication is privileged *only* when it relates to litigation that is *contemplated in good faith* and *under serious consideration.*" (*Action Apartment Assn., Inc. v. City of Santa Monica, supra*, 41 Cal.4th at p. 1251, italics added; see *Dickinson v. Cosby* (2017) 17 Cal.App.5th 655, 682.) "But such preparatory communications do not qualify as a protected activity if future litigation is not anticipated, and is therefore only a 'possibility'—and this is true even if the communication is a necessary prerequisite to any future litigation." (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 703.) "While not dispositive, whether a lawsuit was ultimately brought is relevant to the determination of whether one was contemplated in good faith at the time of the demand letter." (*Dickinson v. Cosby, supra*, 17 Cal.App.5th at p. 683.)

The Szymczyks' counsel relied on *Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903 to argue that if there is a prelitigation demand and the subsequent filing of litigation, an inference is raised that the prelitigation demand was made in good faith and in serious contemplation of litigation. (*Id.* at p. 920 [initiation of lawsuit gives rise to "inference of connectedness" between demand letter and litigation].) *Blanchard* is

9

distinguishable, however. In that case, DIRECTV sent demand letters to "thousands of customers" who had been identified as having purchased equipment to decrypt and steal DIRECTV's programming. (*Id.* at p. 909.) These demand letters "provided the recipients with an opportunity to resolve the matter by way of settlement before commencement of suit." (*Id.* at p. 910.) DIRECTV ultimately filed lawsuits in federal court against more than 24,000 individuals. (*Ibid.*, fn. 2.)

By contrast, the affidavit of loss here neither threatens litigation against Philadelphia nor provides Philadelphia with an opportunity to settle any disputes with the Szymczyks before litigation is initiated. To the contrary, the affidavit of loss makes a claim against the bond issued by Philadelphia to Renaissance in a specific amount, and provides the facts supporting that claimed loss.

Prelitigation communications fall along a spectrum. At one end of the spectrum is the attorney demand letter, which is normally found to be a protected prelitigation communication. "'The classic example of an instance in which the privilege would attach to prelitigation communications is the attorney demand letter threatening to file a lawsuit if a claim is not settled.'" (*Dickinson v. Cosby, supra*, 17 Cal.App.5th at p. 682.)

At the other end of the spectrum are claims for payment to an insurer made before the commencement of litigation, but within the regular course of business; such claims have routinely been held to not be protected acts under the anti-SLAPP statute. (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 826-827; *Beach v. Harco National Ins. Co.* (2003) 110 Cal.App.4th 82, 94-95; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 932; *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 285.)

At oral argument, counsel for the Szymczyks attempted to distinguish these cases involving claims for payment from an insurer from cases involving claims against

an indemnitor, such as this case. We perceive no principled distinction between the two. At root, these are both cases against a third party. A claim for indemnification arising out of another party's bad act is treated the same as a claim arising directly out of that bad act. (*Chodos v. Cole* (2012) 210 Cal.App.4th 692, 705 [attorney malpractice claim by client was not protected act for purposes of anti-SLAPP statute, so indemnity claim against the attorney based on the same malpractice brought by nonclient was also not protected].)

Not every claim made in an insurance or indemnity context falls outside the protection of the anti-SLAPP statute. As the appellate court explained in *People ex rel. Fire Ins. Exchange v. Anapol, supra*, 211 Cal.App.4th 809: "We can certainly envision circumstances in which an insurance claim is submitted in anticipation of litigation contemplated in good faith and under serious consideration. For example, a claim may be submitted after *informal* negotiations with the insurance company have proven unfruitful, and the insured has already decided to bring suit on the policy. In those circumstances, submission of the claim would be nothing more than the satisfaction of the statutory prerequisite for a suit. Similarly, an insured that has already been informed that its claim will be denied may submit the claim in the language of a demand letter, threatening suit if the claim is not paid in full. There, too, submission of the claim would qualify as a protected prelitigation statement in furtherance of the right of petition.

"We hasten to add, however, that such circumstances are the exception, rather than the rule. In most cases, the insurer is not aware that the insured will be making a claim until the claim is made; thus, the insured will have no reason to believe the claim will be denied and litigation will follow. In the usual course, while litigation for failure to pay the claim is a *possibility*, it is no more of a possibility than in any case where one party to a contract requests the other party to perform its duties under the agreement. That possibility of litigation in the event of nonperformance is not enough to conclude the claim is made in anticipation of litigation contemplated in good faith and

11

under serious consideration." (*People ex rel. Fire Ins. Exchange v. Anapol, supra,* at pp. 827-828.)

The Szymczyks' anti-SLAPP motion states, in relevant part: "The demand [in the affidavit of loss] was made in contemplation of litigation if Philadelphia failed to pay Defendants the face amount of the bond." (Some capitalization omitted.) The affidavit of loss was submitted to Philadelphia immediately after Renaissance walked off the job. Nothing in the motion or its supporting documents shows that Philadelphia had any notice of the claimed loss before the affidavit of loss was submitted. Although there is some confusion regarding whether the affidavit of loss was first submitted to Philadelphia on November 11 or November 19, 2019, at neither point could the Szymczyks have reasonably believed that Philadelphia had made a decision to deny the claim and that litigation with Philadelphia was anything more than a future possibility.

The trial court correctly determined that the affidavit of loss was not related to litigation that was, at the time of the filing of the affidavit, contemplated in good faith and under serious consideration. The statements in Renaissance's complaint relating to the affidavit of loss to Philadelphia are not protected acts for purposes of the anti-SLAPP statute.

III.

*DID RENAISSANCE DEMONSTRATE ITS CLAIMS RELATING TO THE LICENSE BOARD COMPLAINT HAVE AT LEAST MINIMAL MERIT?*

As the second part of the anti-SLAPP analysis, we consider whether Renaissance demonstrated its claims had at least minimal merit. We do not weigh the evidence or resolve conflicting factual claims; to the contrary, we accept Renaissance's evidence as true, and evaluate the Szymczyks' evidence only to determine if it defeats Renaissance's claim "'as a matter of law.'" (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) We may consider any evidence "if it is

12

reasonably possible the proffered evidence set out in those statements will be admissible at trial. Conversely, if the evidence relied upon cannot be admitted at trial, because it is categorically barred or undisputed factual circumstances show inadmissibility, the court may not consider it in the face of an objection." (*Id.* at p. 949.) We note that neither party filed any objection to the evidence submitted by the other side in connection with the anti-SLAPP motion.

A.

*Evidence Offered by the Parties*

In support of their motion, the Szymczyks filed a declaration from Rheia Szymczyk attaching the contracts and the written amendment, the e-mail from Renaissance purporting to quit the job, the affidavit of loss, and the License Board complaint. Rheia Szymczyk's declaration contains the following statement: "The Affidavit of Loss was made in contemplation of litigation against Philadelphia if Philadelphia failed to pay me the face amount of the bond." (Some capitalization omitted.)

The anti-SLAPP motion is also supported by a declaration from the Szymczyks' attorney, Andrew Weiss, which states that on March 17, 2020 he electronically submitted a cross-complaint on behalf of the Szymczyks; the cross-complaint included a claim against Philadelphia based on the contractor's bond. The Szymczyks did not offer any additional evidence in connection with their reply brief.

In opposition to the anti-SLAPP motion, Renaissance submitted the declarations of its counsel, Morteza Aghavali, and its chief executive officer, Mehran Ghassemi. Aghavali's declaration attached his communications with the Szymczyks in December 2019 in which Aghavali recommended mediating the dispute, and Rheia Szymczyk declined until the License Board had reviewed the complaint. Aghavali's declaration also states that he had no contact with the Szymczyks or their attorneys until after the complaint was filed in the trial court.

13

Ghassemi's declaration states that the Szymczyks made false and fraudulent statements in their affidavit of loss to Philadelphia and in the License Board complaint. Ghassemi's declaration also attaches and authenticates the e-mails exchanged between Rheia Szymczyk and him in November 2019 documenting the end of their business relationship; the contracts and deposit payments; invoices for products purchased by Renaissance for use in the Szymczyks' home improvement project; inspection records and permit invoices for the property from the City of Lake Forest; and Renaissance's response to the affidavit of loss submitted to Philadelphia.

B.

*Analysis*

Renaissance contends that the License Board complaint and the affidavit of loss contain "demonstrably false" allegations and are "fraudulent" claims, and its complaint therefore has the necessary minimal merit to survive the anti-SLAPP motion.

As noted above, the License Board complaint initiated an official proceeding and is, therefore, absolutely privileged under Civil Code section 47. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 912-913 [letter to Attorney General seeking investigation was covered by litigation privilege]; *Lebbos v. State Bar* (1985) 165 Cal.App.3d 656, 668 ["any communication with an official agency designed to prompt investigation by that agency is absolutely privileged"].)

Renaissance cites *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 114 and *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1262-1263 for the proposition that the litigation privilege does not contradict the minimal merit Renaissance has shown. These cases explain that the fact that a statement is covered by the litigation privilege (Civ. Code, § 47, subd. (b)) does not necessarily mean that the statement is protected activity for purposes of the anti-SLAPP statute. These cases address the issue of the first prong of the test, not the second prong.

14

(See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 323 [litigation privilege and anti-SLAPP statute "are not substantively the same"].)

We therefore conclude that the claims involving the License Board complaint lack minimal merit. The portions of causes of action three, four, five, six, and seven that allege claims arising from the License Board complaint are stricken under the anti-SLAPP statute.

## IV.
### *ATTORNEY FEES*

A defendant that prevails on an anti-SLAPP motion may recover its attorney fees and costs. (Code Civ. Proc., § 425.16, subd. (c).) If that defendant prevails in part, it is still entitled to fees and costs "unless the results of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 340 (*Mann*).) We review the trial court's ruling for abuse of discretion. (*Ibid.*)

In determining the portion of the fees and costs incurred to which a partially prevailing party is entitled, the trial court should "consider the significance of the overall relief obtained by the prevailing party in relation to the hours reasonably expended on the litigation and whether the expenditure of counsel's time was reasonable in relation to the success achieved." (*Mann, supra,* 139 Cal.App.4th at p. 344.) "[T]he court should first determine the lodestar amount for the hours expended on the successful claims, and, if the work on the successful and unsuccessful causes of action was overlapping, the court should then consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate. [¶] This analysis includes factors such as the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which

future litigation expenses and strategy were impacted by the motion. The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way. The court should also consider any other applicable relevant factors, such as the experience and abilities of the attorney and the novelty and difficulty of the issues, to adjust the lodestar amount as appropriate." (*Id.* at p. 345.)

The trial court did not address the issue of fees. "The failure to exercise discretion is an abuse of discretion." (*Pratt v. Ferguson* (2016) 3 Cal.App.5th 102, 114.) On remand, the trial court shall consider the issue of fees, bearing in mind the above-cited authorities and the disposition of this appeal.

DISPOSITION

The order is affirmed in part, reversed in part, and remanded. The trial court's order denying the anti-SLAPP motion as to references to the License Board in the third, fourth, and seventh causes of action is reversed. In all other respects, the order is affirmed. The trial court shall enter an order granting the anti-SLAPP motion as to all references to the License Board complaint in the third, fourth, fifth, sixth, and seventh causes of action.

We remand for the trial court to determine in the first instance how much, if any, the Szymczyks should be awarded as attorney fees pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1).

In the interests of justice, because each party succeeded in part on appeal, neither party shall recover costs.


                                        FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


ZELON, J.*

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17