[Civ. No. 63270. Second Dist., Div. Two. Aug. 17, 1982.]

JEROME B. ROSENTHAL et al., Plaintiffs and Appellants, v. IRELL & MANELLA et al., Defendants and Respondents.

**COUNSEL**

Gerald Goldfarb for Plaintiffs and Appellants.

Irell & Manella, Robert L. Winslow, Thomas W. Johnson, Jr., Peter J. Gregora and Scott D. Baskin for Defendants and Respondents.

**OPINION**

**COMPTON, Acting P. J.**—Plaintiff in an action for inducing breach of contract, intentional interference with prospective economic advantage

and intentional infliction of emotional distress, appeals from a judgment of dismissal entered after the trial court sustained a demurrer without leave to amend. We affirm.

During a period of some 18 years, from 1950 until 1968, plaintiff Jerome B. Rosenthal (Rosenthal), an attorney, and the law firms with which he was associated, acted as legal counsel for entertainer Doris Day, her husband Martin Melcher and their various family corporations.

Following the death of Melcher in 1968, extensive litigation erupted, which for purposes of simplicity we shall describe as being between Day and Rosenthal. These controversies, consisting of eleven suits filed by Rosenthal and two filed by Day, most of which contained cross-complaints, and all of which involved the relationship between the parties for the period described, were ultimately consolidated for trial without a jury in 1974.

Since Rosenthal was insured against professional liability by six insurance companies, the latter undertook his defense and provided counsel for that purpose.[1] Day was represented at all times during this litigation by the firm of Irell & Manella who are the defendants in the instant action.

On March 31, 1975, a judgment was rendered against Rosenthal and in favor of Day for more than $26 million, upon findings of fact and conclusions of law to the effect Rosenthal had been negligent, had breached his fiduciary duties and, to some extent, had been guilty of fraudulent conduct.

Thereafter, five of the insurance carriers (the Insurer Group) continued with Rosenthal in perfecting an appeal of the judgment.[2] While the appeal was pending, Irell & Manella and Robert L. Winslow (Irell & Manella), attorneys for Day and respondents herein, entered into discussions with the Insurer Group which culminated in a settlement in August of 1977 whereby, in general, the judgment against Rosenthal would be satisfied. Based thereon, counsel which had been supplied for Rosenthal by the Insurer Group sought and obtained from Division Three of this court, where the appeal was pending, leave to withdraw.

---

[1] Rosenthal, of course, received assistance only insofar as his defense was concerned, and supplied his own counsel respecting his affirmative claims against Day.

[2] The sixth carrier had earlier removed itself from the litigation by settlement with Day.

Rosenthal rejected this apparent disposition of the matter based on his contentions (a) that each of the Insurer Group's policies of insurance provided specifically that settlement could be effected only with his written consent and (b) that the purported settlement was arrived at without his knowledge or agreement.[3]

In permitting counsel to withdraw, Division Three ordered that briefing in the matter be held in abeyance to permit Rosenthal to institute a declaratory relief action in the superior court to determine the duty, if any, of the insurer group to continue to provide him with counsel on the appeal.

Such an action was instituted but its parameters were considerably expanded when Rosenthal joined as defendants in the action, Day's lawyers, the firm of Irell & Manella and Robert Winslow, a member of that firm. It is this latter facet of the litigation which now engages our attention.

Rosenthal, in his complaint, in effect accuses his adversary's lawyers of inducing his insurance carriers to breach their contract with him by settling his financial liability and withdrawing from their representation of him in the appeal all without his consent.

It should be observed that the appeal in the underlying case is still pending and viable. The nature of the judgment appealed from is such that a resolution of the validity of Rosenthal's affirmative claims, claims on which he has supplied his own counsel, will in large measure determine the validity of Day's claims against him.

Thus, Rosenthal has not been left naked of representation on appeal. It appears simply that he is desirous of having counsel provided by the Insurer Group to handle the laboring oar. The damages he allegedly suffered at the hands of defendants are said to flow simply from the delay in the resolution of the appeal and his ultimate vindication, a delay occasioned by the need to litigate the insurer group's duty to participate in the appeal.

---

[3]Rosenthal's stated purpose in resisting the accord, of course, was that, while his monetary liability no longer existed, the conclusions respecting his conduct which provided the foundation for that liability remained as a "blot on his escutcheon."

■ The trial court's order sustaining the demurrer was based on application of Civil Code section 47[4] and the statute of limitations prescribed in Code of Civil Procedure section 340.6. We do not reach the latter issue since we have concluded that Civil Code section 47 bars Rosenthal's action against these lawyer defendants.

The privilege created by Civil Code section 47, though part of the statutory law dealing with defamation, has evolved through case law application into a rather broad protective device which attaches to various classes of persons and applies to types of publications and in types of actions not traditionally identified with the field of defamation.

The initial departure from limiting the privilege to defamation actions came in *Albertson v. Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], where it was held that the privilege would serve to bar an action for disparagement of title based on the filing of a lis pendens.

In *Albertson*, at page 379, it was held, "The publication of the pleadings is unquestionably clothed with absolute privilege, and we have concluded that the republication thereof by recording a notice of *lis pendens* is similarly privileged."

From that point application of the privilege has branched out in essentially two directions. First, it has been applied to defeat tort actions based on publications in protected proceedings but grounded on differing theories of liability, to wit, abuse of process (*Thornton v. Roden* (1966) 245 Cal.App.2d 80 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Twyford v. Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145]; *Younger v. Solomon* (1974) 38 Cal.App.3d 289 [113 Cal.Rptr. 113]; *Umansky v. Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547]); intentional infliction of mental distress (*Kachig v. Boothe* (1971) 22 Cal.App.3d 626 [99 Cal.Rptr. 393]; *Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592]; *Pettit v. Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650]; *Scott v. McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277 [112 Cal.Rptr. 609]); inducing breach of contracts (*Agostini v. Strycula* (1965) 231 Cal.App.2d 804 [42 Cal.Rptr. 314]; *Scott v. McDonnel Douglas Corp., supra*); interference with prospective economic advantage (*Brody v. Montalbano* (1978) 87 Cal.App.3d 725 [151 Cal.Rptr. 206]); fraud and negligence (*Pettit v. Levy, supra*).

[4]Civil Code section 47 provides in part: "A privileged publication or broadcast is one made— [¶] 2. In any ... (2) judicial proceeding, ..."

Secondly, the privilege has been applied to publications which were private communications between parties and which communications were related not only to actual but potential court actions.

"The absolute privilege attaches to any publication that has any reasonable relation to the action and is made to achieve the objects of the litigation, even though published outside the courtroom and no function of the court or its officers is involved." (*Pettitt* v. *Levy, supra*, 28 Cal. App.3d 484, at p. 489; also see *O'Neil* v. *Cunningham* (1981) 118 Cal. App.3d 466 [173 Cal.Rptr. 422], *Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254 [163 Cal.Rptr. 689], *Larmour* v. *Campanale* (1979) 96 Cal.App.3d 566 [158 Cal.Rptr. 143], *Lerette* v. *Dean Witter Organization, Inc., supra.*)

In the case at bench Rosenthal pleaded in conclusionary fashion that defendants intentionally "induced" the insurer group to breach its contract with Rosenthal. It is this inducement which is at the heart of all of Rosenthal's theories of liability.

Since the complaint does not further enlighten us as to the nature of the inducement we can only conclude that it took the form of utterances, either written or oral - hence "publications". We assume that if Irell & Manella had held a gun to the head of the insurer group or held the presidents of the various carriers hostage, such facts would have been pleaded.

Reduced to its simplest terms, Rosenthal's complaint alleges that defendants published certain undescribed statements to the Insurer Group, which induced that group to breach its contract with Rosenthal by settling without his consent. Patently those publications were closely related to judicial proceedings and the insurer group were persons with a direct interest in the action. Further, these publications clearly were in the interest of achieving the objects of the underlying litigation.

At this point we have no trouble in concluding that defendants' conduct as alleged in the complaint is within the purview of Civil Code section 47, as that privilege has been applied in the previously cited cases.

We thus come to what appears to us to be the most significant issue and that is whether the publications, i.e., the statements of inducement are themselves the type of publications envisioned by Civil Code section

47. Rosenthal cites us to the recent case of *Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386 [182 Cal.Rptr. 438], which case contains an exhaustive analysis of the scope of Civil Code section 47, and which emphasizes that the privilege applies to any type of injury resulting from publications within a protected proceedings of an injurious *falsehood.* The court stated at pages 390-391, that "cases have applied the privilege to defeat tort actions which, however labeled and whatever the theory of liability, are predicated upon the publication in protected proceedings of an *injurious falsehood.*" (Italics added.)

*Block* involved the submission of a negligently prepared and inaccurate medical report by the coroner concerning the death of a child to the district attorney with a view to possible prosecution of the child's mother. The mother then sued the preparer of the report for professional negligence. The court in *Block* held that the privilege clearly barred the action regardless of its caption or theory. Hence, the thrust of *Block* was not that a publication in order to be covered by the privilege must always consist of a falsehood.

Relying on *Block*, however, Rosenthal now contends that since he did not allege that the conduct of the defendants here consisted of publishing *false statements* of fact, the privilege, for that reason, does not apply.

This contention is pregnant with the admission that if defendants in communicating with the Insurer Group had couched their inducement in false and defamatory statements concerning Rosenthal, the privilege would apply. We view that as an illogical proposition. The defendants should not be penalized for the fact that their communications with the insurer did not contain material defamatory to Rosenthal.

We are of the opinion that the question of whether the publication is a "falsehood" is not the determining factor in applying Civil Code section 47. In fact, since perjury and the presentation of false documents are covered by the privilege, there would seem to be no reason to withhold the protection of the privilege from publications which are less culpable. (See *Pettitt* v. *Levy, supra,* 28 Cal.App.3d 484.)

██ The more accurate statement of the rule is reached by altering the language from *Block* v. *Sacramento Clinical Labs, Inc., supra,* 131 Cal.App.3d 386, to state that the privilege applies to an injurious *publication* (rather than falsehood) of whatever nature, in a protected

proceedings. It is the conduct of publishing rather than the publication itself which is protected by Civil Code section 47, subd. 2.

Furthermore, although the *Albertson* v. *Raboff* rationale treated a lis pendens as a republication of the complaint in the action, the practical fact is that a lis pendens could not be characterized as a "falsehood." It is simply a notice that an action is pending, normally a true statement. Similarly, in *Frank Pisano & Associates* v. *Taggart* (1972) 29 Cal. App.3d 1 [105 Cal.Rptr. 414], the privilege was held to apply to the filing of a mechanics lien in an action for disparagement of title. The lien there was alleged to be defective because of a failure to give a proper prelien notice, but even a defective mechanics lien cannot be characterized as a "falsehood."

In *Asia Investment Co.* v. *Borowski* (1982) 133 Cal.App.3d 832 [184 Cal.Rptr. 317], a settlement proposal made in a threatening manner was held to be privileged. In terms of whether the nature of the publication is such as to qualify for the protection of the privilege, there appears to us to be no qualitative difference between the filing of a defective mechanics lien, the filing of a lis pendens or the making of threats on the one hand and the urging of a settlement of a judgment, albeit without plaintiffs' consent, on the other.

 In summary then, we conclude that the conduct of the defendants as alleged by the complaint consisted of publications by parties to a matter of litigation made to persons vitally interested in the litigation and those publications were closely related to the litigation. Thus according to the various authorities which we have cited, those publications were privileged under Civil Code section 47, and that privilege serves to defeat Rosenthal's action against the defendants on all of the legal theories which he has attempted to plead.

The judgment is affirmed.

Beach, J., and Gates, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 13, 1982.