Filed 3/17/22  The Twelve Tribes of Israel v. Barnum CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE TWELVE TRIBES OF ISRAEL, U.S.A., INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KATRINA BARNUM, <br><br> Defendant and Appellant. | B299838 <br><br> (Los Angeles County Super. Ct. No. BC574481) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed in part and Reversed in part.

Kerendian & Associates, Inc., Shab Kerendian and Edrin Shamtob for Defendant and Appellant.

Westwood Lawyers and Lottie Cohen for Plaintiff and Respondent.

_____

Defendant and appellant Katrina Barnum appeals a judgment in favor of plaintiff and respondent, The Twelve Tribes of Israel, U.S.A., Inc. (the Tribe) for promissory fraud and breach of an oral settlement agreement.[1]  The instant action arose out of promises Barnum made to the Tribe, while selling a property owned by her husband, Wilhelm Grafrath, and used by the Tribe as its headquarters.  Grafrath, the leader of the Tribe, purchased the property in 1997, taking title in his own name, and Barnum quitclaimed any interest in the property.  The Tribe subsequently paid the mortgage payments and used the property as its headquarters, believing that once the mortgage was paid off Grafrath would transfer title to the Twelve Tribes organization.

In 2006, Grafrath was deported to Germany, following a felony conviction, where he remains to this day.  After Grafrath's departure, the Tribe continued to use the property as its headquarters and pay the monthly mortgage payments.

In 2014, Barnum quietly put up the property up for sale, pursuant to a power of attorney executed by Grafrath.  When the Tribe found out about the sale, the Tribe filed suit against both Barnum and Grafrath seeking to halt the sale on the grounds that the Tribe had equitable rights to the property and/or the right to recoup their payments.

Barnum subsequently accepted an offer on the property, but the pending lawsuit threatened to derail the closing.  Barnum met with a

---

[1]     No disrespect is intended by not repeating the full name of a party or individuals each time they are addressed.  (See *ENA North Beach, Inc. v. 524 Union Street* (2019) 43 Cal.App.5th 195, 198, fn. 1.)

group of Tribe members, and promised that she would transfer the net proceeds of the sale to the Tribe, in exchange for their dismissal of the pending lawsuit. The Tribe dismissed the pending lawsuit and escrow successfully closed on the property. Barnum, however, paid none of the proceeds to the Tribe and instead pocketed the proceeds for her own use, including the payment of delinquent taxes on separate properties facing imminent foreclosure.

After unsuccessfully seeking to reopen their lawsuit, the Tribe filed the instant action, which eventually proceeded to a bench trial with only Barnum as defendant. The trial court found in favor of the Tribe on its actions for promissory fraud and breach of contract/settlement agreement; the court awarded the Tribe $375,000 in compensatory damages and $180,000 in punitive damages.

On appeal, Barnum challenges the trial court's judgment on four grounds, contending that: (1) the promissory fraud claim is barred by the litigation privilege (Civ. Code, § 47, subd. (b)(2)), which prohibits derivative tort actions based on statements made in connection with litigation; (2) the breach of oral settlement/contract claim is barred by the statute of frauds (Civ. Code, § 1624, subd. (c)) which requires that an agreement for the sale or transfer of property, be in writing; (3) Barnum, in her capacity as Grafrath's agent, cannot be held liable for actions taken on Grafrath's behalf; and (4) the trial court erred in refusing to dismiss the action on the grounds that Grafrath was an indispensable party.

We agree that the promissory fraud claim is barred by the litigation privilege, but find no reversible error in Barnum's remaining

3

contentions.  We therefore reverse the trial court's judgment with respect to the promissory fraud cause of action (and the associated punitive damages award), but otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual History*[2]

    1.     *The Tribe's Move to California*

In 1985, a group of members of the Twelve Tribes of Israel, U.S.A., Inc. of New York, moved to California and formed the Twelve Tribes of Israel in Los Angeles.  Wilhelm Grafrath was the church leader or "Overseer" of the group and Katrina Barnum was then, and currently is, his wife.  Initially, the Tribe was an unincorporated religious organization, guided by the rules set up by the headquarters in New York. The Tribe formally incorporated in California in 1998.

    2.     *Acquisition of the Furness Avenue Property in 1997, and Use of Property as the Tribe's Headquarters*

In 1997, a year before the tribe formally incorporated, Grafrath purchased a property located at 238 Furness Avenue in Highland Park, California ("Furness property" or "the Property").  Grafrath obtained a loan from Delta Credit Corporation in the amount of $52,850 to finance

---

[2]     Our factual summary is based on the parties' stipulated statements, exhibits, and the trial court's statement of decision.  (See *Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal. App. 5th 649, 655, fn. 2; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2; see also fn. 9, *post*.)

the purchase of the property, which was secured by a deed of trust recorded against the property in February 5, 1997. Barnum quitclaimed any interest she may have had in the property to Grafrath, and Grafrath took title via grant deed, as "a married man as his sole & separate property."

The Tribe, however, paid the subsequent mortgage payments, and used the property as its headquarters and place of worship.

3. *Conviction and Deportation of Overseer Grafrath in 2006*

In 2003, Grafrath was arrested for molesting one of the children in the congregation of the Tribe and subsequently suffered a felony conviction. In 2006, he was deported to Germany, his country of origin, where he continues to live to this day.

At some point around the time of Grafrath's arrest, he executed a general power of attorney, authorizing Barnum to handle his matters in Los Angeles.

After Grafrath was deported, the Tribe continued to use the property for its congregational functions and continued to pay the mortgage.

4. *Sale of Property, and Prior Lawsuit filed in 2014*

In January 2014, Barnum secretly placed the property up for sale. Barnum brought a real estate agent to organizational events, but did not introduce the agent as a real estate agent, and there was no "for sale" sign on the property.

On March 3, 2014, after learning that Barnum was selling the property, the Tribe filed an action against both Barnum and Grafrath, seeking to halt the sale. The complaint pled actions for breach of oral contract, negligence per se, and unfair business practices, and alleged that in 1998, the parties verbally agreed that Grafrath would sign the Deed of Trust on behalf of the Tribe, that the Tribe would make the monthly mortgage payments on the property, and that the property would not be sold out from under the Tribe. The complaint further alleged that Barnum had refused the Tribe's demands to stop the sale of the property. The Tribe requested cancellation of the sale and/or damages for harm suffered, including their contributions to the mortgage on the property.

5.    *Dismissal of 2014 Lawsuit After Barnum Promises Tribe Proceeds from Pending Sale*

In mid-March 2014, Barnum entered into escrow to sell the property for $215,000.[3] However, the title company would not issue title insurance as long as the lawsuit involving the Property continued. Faced with this obstacle, Barnum met with the Tribe and promised that once she sold the property, she would give the net monetary proceeds to the Twelve Tribes Corporation. Barnum made these promises to the

---

[3]    In April 2014, Grafrath executed another general power of attorney, authorizing Barnum to act as Grafrath's agent with respect to several categories, including real estate, as well as a specific power of attorney, authorizing Barnum to act as his agent with regard to the Furness property. An updated power of attorney was required by the title company to close the sale of the Property.

Board members as a group, and individually, stating she would transfer the proceeds after paying any taxes due. In exchange for her promise, the Tribe agreed to dismiss the lawsuit.

On July 21, 2014, the Tribe filed a request for dismissal of the action without prejudice, which was entered the same day.[4] Escrow closed on the property on July 24, 2014, and Barnes received a wire transfer of the funds into her account on the following day. Barnum never sent any part of the proceeds from the sale of the Furness Property to Grafrath. Instead, she diverted and converted all of the funds for her own use.

After escrow had closed, Barnum continued to promise the Tribe that she would provide the net sale proceeds to them. The Tribe moved out of the property, opened a bank account, and sought new headquarters for the Tribe.

On January 21, 2015, the Tribe filed a motion to re-open the prior lawsuit on the grounds that Barnum breached an oral agreement by failing to deliver half of the proceeds of the sale of the Property. The court denied the motion on the grounds that a non-profit organization was attempting to appear in pro per.

### B. *Procedural History*

#### 1. *Initial Complaints Filed by Tribe and Court Rulings*

On March 9, 2015, a member of the Tribe filed the first complaint in this action, pleading a single claim against Barnum for breach of

---

[4] Prior to the lawsuit, Barnum had received all-cash offers as high as $350,000.

contract. The complaint alleged that Barnum orally agreed to provide the Tribe "half of the proceeds" from the sale of the property, in exchange for the dismissal of the prior lawsuit by the Tribe.

On October 23, 2015, the Tribe filed a first amended complaint, replacing the named plaintiff in the case. The complaint alleged that Barnum had verbally promised to pay the Tribe the net sale proceeds, and alleged four causes of action: (1) breach of oral contract; (2) money had and received; (3) breach of fiduciary duty; and (4) fraud.

Barnum filed a motion for judgment on the pleadings, alleging, inter alia, that the statute of frauds barred the first two claims, and that her capacity as an agent precluded liability on the remaining claims. The trial court granted Barnum's motion for judgment on the pleadings on the first three causes of action, but denied the motion as the Tribe's fraud claim.

The Tribe filed a second amended complaint (SAC), and then a third amended complaint (TAC), attempting to correct the infirmities of the complaint, but both complaints resulted in the trial court again sustaining the demurrer to the first three causes of action. In sustaining the demurrer to the TAC, the trial court did so without leave to amend, thereby leaving only the fraud claim as the sole surviving claim set for trial.[5]

---

[5] Although the Tribe added Grafrath to the SAC, resulting in a default judgment against him, the default judgment was subsequently set aside due to noncompliant service. The Tribe subsequently dismissed Grafrath as a defendant from the TAC.

The trial judge who issued the ruling on the TAC, Judge Robert Hess, recused himself following a motion for peremptory challenge under Civil Code

2. *Bench Trial and Final Amendment to Complaint*

In April 2018, prior to trial, Barnum filed a motion to dismiss the action for the Tribe's failure to join Grafrath as an indispensable party, contending that complete relief could not be accorded among the then parties because Grafrath was the sole record title holder of the Property and Barnum was merely functioning as Grafrath's agent with respect to the sale of the Property. The trial court denied the motion.

The trial court subsequently bifurcated the case into a two-phase bench trial, with phase one for liability, and phase two for punitive damages. Phase One began on August 6, 2018, upon the Tribe's only remaining cause of action for Fraud in the TAC. In lieu of utilizing a court reporter to transcribe testimony provided by various witnesses, the parties elected to utilize settled statements. Testimony was given during an eleven day trial by various witnesses between August 6, 2018 and October 24, 2018.

a. *Motion to Amend TAC, and Subsequent Filing of FAC*

On August 14, 2018, the Tribe moved to amend the TAC to add a second cause of action for "Enforcement of Settlement Agreement." On November 6, 2018, the court granted the Tribe's motion and allowed the Tribe to file its fourth amended complaint (FAC)—the operative complaint in this case. The court found the amendment was "based on the same facts as the first cause of action for promissory fraud." The

of Procedure 170.6; the matter was then transferred to Judge Kendig, who presided over the instant bench trial.

court further noted that "the breach of contract claim which [the Tribe] seeks to add by amendment now is a different breach of contract claim from that in the original complaint, which was dismissed on demurrer by a different court" and "relates to a slightly different legal theory."[6]

b. *Trial Court's Statement of Decision*

On December 11, 2018, the trial court issued a tentative statement of decision on phase one of the trial, finding in favor of the Tribe and against Barnum on each cause of action. and awarded the Tribe $375,000 in compensatory damages.

Barnum objected to the proposed statement of decision, contending it did not sufficiently address the controverted issues at trial, and failed to provide the appellate court with sufficient information regarding the factual or legal bases for the trial court's ruling. Barnum requested the trial court explain its reasoning on the principal issues in the following four categories: (1) the court's denial of Barnum's litigation privilege defense to the promissory fraud claim; (2) the court's denial of Barnum's statute of frauds defense to the breach of oral settlement claim; (3) the court's determination of ownership of the

---

[6] The breach of contract claim in the TAC did include allegations that Barnum, while the 2014 lawsuit was pending, verbally promised to the Tribe that she would sell the property and give the net proceeds to the Tribe, in exchange for dismissal of the lawsuit. However, the TAC was against both Barnum and Grafrath, at the time of the prior court's ruling, and also included a series of allegations regarding the Tribe's "100% equitable interest" in the property and Grafrath's designation as "nominee straw person" who controlled "the bare legal title to the religious corporation's real property."

property without Grafrath's inclusion or participation as an indispensable party; and (4) the court's failure to explain its finding of liability against Barnum on each claim, while she was acting as Grafrath's attorney-in fact under the specific and general powers of attorney.

On January 4, 2019, the trial court filed its final statement of decision, with minor changes to its tentative statement of decision. The court awarded the Tribe a constructive trust over Barnum's bank account and four real properties, into which she diverted the net proceeds of the sale. Lastly, the court found Barnum had acted with malice, oppression, and fraud—a precursory finding for a future punitive damages award in phase two of the trial. On April 22, 2019, after a three day bench trial, the court issued its final statement of decision on phase two of the trial, and awarded the Tribe $180,000 in punitive damages.

On May 23, 2019, the trial court entered its final judgment in this action, and Barnum timely appealed.

## DISCUSSION

"In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party,

11

drawing all reasonable inferences in support of the findings. [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)[7]

Barnum contends that (1) the promissory fraud claim is barred by the litigation privilege; (2) the breach of oral settlement agreement/contract claim is barred by the statute of frauds; (3) Barnum cannot be held liable for any promises made while acting as Grafrath's agent; and (4) Grafrath is an indispensable party to this action. For the reasons we discuss, we agree that the promissory fraud claim is barred by the litigation privilege, but find no error in Barnum's remaining claims. We address the promissory fraud and breach of contract claims first, as some our discussion regarding these claims forms the basis for our disposition of the latter two contentions.

I.     *The Promissory Fraud Claim*

Promissory fraud is a subspecies of fraud, and an action may lie where a defendant fraudulently induces the plaintiff to enter into a contract, by making promises she does not intend to keep. (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The elements of fraud are misrepresentation, knowledge of falsity, intent to induce reliance on the misrepresentation, justifiable reliance on the misrepresentation, and resulting damages. (*Ibid*.) Here, the trial court found the Tribe had established its action for fraud by false promises by clear and convincing evidence. Specifically, and as relevant to our discussion

---

[7]     Barnum states that the facts decisive to this appeal are undisputed. As indicated by our opinion, we largely agree, but note where it is otherwise.

12

below, the court found that Barnum promised Tribe members on several occasions that when she sold the property, she would give the proceeds to the Tribe. Barnum made this promise to a group of Tribe Board members during the pendency of the lawsuit, and continued to reaffirm this promise to individual Tribe members Michael Whyte and Arlene Andrade in August, after the lawsuit had been dismissed by the Tribe.

The court further found that Barnum clearly intended for the Tribe to rely on her promise and dismiss the lawsuit, which they did, as Barnum was "in a big hurry" to close escrow on the property and "pocket the proceeds." The court found additional reliance on the part of the Tribe in their willingness to cooperatively move out of the property, foregoing the filing of a *lis pendens*, and willingness to wait for the funds to be paid out by Barnum after taxes were calculated.

The trial court rejected Barnum's assertion that the claim was barred by the litigation privilege. This was error.


A. *Relevant Law*

Civil Code, section 47, subdivision (b)(2), makes privileged any publication or broadcast made in a judicial proceeding. Originally designed to provide a privilege in defamation situations, the section now applies to any communication, not just a publication, and bars all state tort suits premised on such communications, save malicious prosecution actions. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211, 213–216 (*Silberg*) [noting litigation privilege operates as a defense to tort liability and serves as an absolute bar].)

"The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation;  and (4) that have some connection or logical relation to the action.  [Citations.]" (*Silberg, supra*, 50 Cal.3d at p. 212.) The privilege has been given broad application to further the public policies it is designed to serve—i.e., affording litigants freedom of access to courts and open channels of communication.  (*Id*. at pp. 213–216.)  As such, it applies to any communication made "'to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved'" (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 (*Rusheen*)), and "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen, supra*, 37 Cal.4th at p. 1057.)  "Any doubt as to whether the privilege applies is resolved in favor of applying it.  [Citations.]" (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 529 (*Adams*).)

B.    *The Promissory Fraud Claim is Barred By the Litigation Privilege*

Barnum's promises to the Tribe fall squarely within the the scope of the litigation privilege.  (Civ. Code, § 47, subd. (b); *Silberg, supra*, 50 Cal.3d at p. 212.)

First, numerous courts have held that statements relating to settlements also fall within the privilege, including those made during

14

settlement negotiations. (See, e.g., *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 843–844 (*Navarro*); *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 23–24 (*Home*); *Joseph A. Saunders, P.C. v. Weissburg & Aronson* (1999) 74 Cal.App.4th 869, 875 ["absolutely privileged"]; *Rosenthal v. Irell & Manella* (1982) 135 Cal.App.3d 121, 126–128 (*Rosenthal*).)

For example, in *Rosenthal, supra*, 135 Cal.App.3d 121, attorneys for a judgment creditor allegedly induced the debtor's insurance carrier to settle in breach of a provision in the insurance contract requiring the insured's consent to settlement. The appellate court concluded that the statements by the attorneys urging settlement were privileged publications and hence a cause of action for inducing a breach of contract (along with tort actions for intentional interference with prospective economic advantage and intentional infliction of emotional distress, premised on these same communications) was entirely barred: "Rosenthal's complaint alleges that defendants published certain undescribed statements to the Insurer Group, which induced that group to breach its contract with Rosenthal by settling without his consent. Patently those publications were closely related to judicial proceedings and the insurer group were persons with a direct interest in the action. Further, these publications clearly were in the interest of achieving the objects of the underlying litigation." (*Rosenthal, supra*, 135 Cal.App.3d at p. 126.)

The same result was reached in *Navarro, supra*, 34 Cal.App.4th at pages 837–838, wherein the plaintiff, a franchisee, sued IHOP

15

Properties, alleging a single cause of action for promissory fraud. Plaintiff alleged that to induce her to settle an unlawful detainer action, IHOP agreed to stay execution of judgment and (falsely) promised to consider offers to buy her franchise rights "without undue delay." IHOP then intentionally delayed consideration of purchase offers until the deadline to sell her rights had passed. (*Id.* at pp. 837–838.)

On appeal, the court found the claim entirely barred by the litigation privilege, stating that "[t]he case law supports IHOP's contention that statements made during settlement negotiations, such as those at issue here, are protected by the litigation privilege" and rejected attempts by the plaintiff to "dismiss[] these cases by stating that they did not relate to claims for fraud." (*Navarro, supra*, 134 Cal.App.4th at p. 844.)

The reasoning in *Navarro* and *Rosenthal* is equally applicable here. During the pendency of the 2014 lawsuit Barnum promised the Tribe that when she sold the property she would tender the proceeds to the Tribe. Barnum made these promises to induce the Tribe into dismissing the suit. Barnum's statements "clearly were in the interest of achieving the objects of the underlying litigation" and thus protected under the privilege. (*Rosenthal, supra*, 135 Cal.App.3d at p. 126; see also *Rusheen, supra*, 37 Cal.4th at p. 1057.)

To the extent Barnum affirmed her promises after the dismissal of the lawsuit, this does not change the result. First, the lawsuit was dismissed without prejudice, meaning that Barnum remained under threat of litigation. (See *Rosenthal, supra,* 135 Cal.App.3d at p. 126 [stating that "the privilege has been applied to publications which were

16

private communications between parties and which communications were related not only to actual but *potential* court actions"], italics added; *Rusheen, supra*, 37 Cal.4th at p. 1057 [privilege not limited to statements made during legal proceedings, but may extend to steps taken before or after litigation].)

Second, the Tribe dismissed the lawsuit shortly before escrow closed at the end of July 2014. In its statement of decision, the trial court noted that Barnum affirmed her promise to pay the proceeds to Tribe members Michael Whyte and Arlene Andrade after dismissal of the suit, and prior to August 17, 2014. Although the court did not explain the significance of the August 17, 2014 date, the testimony given by Whyte indicates that the Tribe formulated a letter to send to Barnum on August 17, 2014, documenting statements she made to the Tribe, and sent it via email the following day. Whyte further testified that in his personal meetings with Barnum in August and September, they discussed the 2014 lawsuit, and that the Tribe was trying to collect the money owed in August.

Given that the lawsuit was dismissed without prejudice, that the Tribe made efforts to collect the money owed, and that the Tribe did in fact seek to reopen the litigation after Barnum failed to abide by her promises, any communications made by Barnum shortly after dismissal of the suit were akin to communications relating to potential court actions or made in anticipation of litigation—which are protected by the litigation privilege. (*Rosenthal, supra,* 135 Cal.App.3d at p. 126; see also *Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1541 [litigation privilege applies to prelitigation demand letters];

17

*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege'"].)

To the extent the court sought to separate out the three-week period between the dismissal of the 2014 lawsuit, and the Tribe's letter to Barnum on August 17, we find no basis for such a narrow and artificial extraction. Instead, we remain guided by the principle that "[a]ny doubt as to whether the privilege applies is resolved in favor of applying it. [Citations.]" (*Adams, supra,* 2 Cal.App.4th at p. 529.)[8]

_____

[8] In its final statement of decision—and after Barnum objected to the court's tentative statement of decision by arguing the court had failed to explain its reasons for rejection of application of the privilege—the trial court added a footnote stating that the false promises were made "on multiple occasions before the litigation, during settlement discussions while the litigation was pending, and also after the litigation was dismissed."

In its respondent's brief, the Tribe repeatedly asserts that Barnum told the Tribe's Executive Board *in 2012* she was going to sell the property and give the Tribe the proceeds. The Tribe, however, cites to no specific portion of the trial record to support this assertion. Barnum points out that the only actionable conduct found by the trial court on the promissory estoppel claim—i.e., that which induced the reliance and caused the injury—was based on promises she made *after* the Tribe filed the 2014 lawsuit. Therefore, the 2012 allegation makes no difference.

While we agree with defendant, we also note the following: When the Tribe filed its 2014 lawsuit to halt Barnum's sale of the property, the complaint expressly alleged that neither Grafrath nor Barnum ever met with the Tribe to discuss their plan to sell the property, and that Barnum was now refusing the Tribe's demands to stop the sale of the property. With regard to the instant lawsuit, the first four complaints solely alleged that Barnum made promises to turn over the proceeds of the sale *during* the pendency of the 2014 litigation.

After the parties started the instant trial in 2018, and defendant raised the litigation privilege, the Tribe moved to amend its complaint to allege an

18

On appeal, the Tribe also argues that the privilege does not apply because Barnum's conduct of selling the Furness property and keeping the sale proceeds was a tortious "course of conduct." While it is true that the litigation privilege encompasses only *communicative* acts and does not privilege tortious courses of *conduct* (*Kimmel v. Goland* (1990) 51 Cal.3d 202, 211), "the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature" (*Rusheen, supra,* 37 Cal.4th at p. 1058).

Here, the only actionable fraud committed by Barnum was her false promise to the Tribe that she would transfer the net proceeds to

action for breach of oral settlement agreement. In that same motion, the Tribe also stated its intent to add the following factual allegations—which it subsequently added to the *promissory fraud* claim: (1) "*Starting in 2012, which was prior to the March 3, 2014 date Lawsuit #1 was filed, Defendant started promising that she would give [the Tribe] the net proceeds of the sale of the Furness real property she wanted to sell because her husband wanted the title and mortgage out of his name*" and (2) "*After Lawsuit #1 was dismissed without prejudice on July 21, 2014, by the Plaintiff, Defendant Katrina Barnum promised that now that she had closed escrow, the net proceeds from the sale of the Furness real property would soon thereafter be given to [the Tribe].*"

The trial court granted the Tribe's motion to amend the complaint in its entirety, stating it merely sought to add a new legal theory based on the same facts alleged for the promissory fraud claim. While defendant objected to the amendment several times asserting, inter alia, that the amendment amounted to a sham complaint in that it was seeking to plead around the litigation privilege  defendant does not renew that issue here on appeal. While we agree that the only actionable promises found by the trial court were based on promises made after filing of the Tribe's lawsuit (thereby supporting application of the litigation privilege as outlined above (see *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 771–772 (*Navellier*)), we would be remiss if we did not at least acknowledge this state of the record.

Tribe after the sale had closed, in order to induce the Tribe's dismissal of the lawsuit and compliance with the sale. As such, the court's findings on the promissory fraud claim exclusively hinged on the communicative statements made by Barnum.[9] (*Navellier, supra,* 106 Cal.App.4th at pp. 771–772 [harm arose from communicative act, and thus litigation privilege barred fraud action]; see also *Rusheen, supra,* 37 Cal.4th at at p. 1065 ["[U]nless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies"].)

Finally, the Tribe argues that the litigation privilege does not apply because Barnum's promises constitute unprotected "extrinsic fraud." The same argument was made by the plaintiff in *Navarro, supra,* 134 Cal.App.4th 834 and well-addressed by the court as follows: "Extrinsic fraud does not occur, as [plaintiff] suggests, when one party lies to another, leading to litigation. 'Extrinsic fraud occurs when a party is deprived of the opportunity to present his claim or defense to the court; where he was kept ignorant or, other than from his own negligence, fraudulently prevented from fully participating in the proceeding. [Citation.] Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, and convincing the other party not to obtain

---

[9]     Indeed, in its motion to amend the complaint and add a claim for breach of settlement, the Tribe expressly acknowledged that the first cause of action was one for promissory fraud, a subspecies of fraud and deceit—and based on Barnum's verbal promise that she would give the Tribe the net proceeds from the sale of the property.

counsel because the matter will not proceed (and then it does proceed). [Citation.] The essence of extrinsic fraud is one party's preventing the other from having his day in court.' (*City and County of San Francisco v. Cartagena* (1995) 35 Cal.App.4th 1061, 1067.) 'By contrast, fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary but has unreasonably neglected to do so. [Citation.]' (*Ibid*.) The type of fraud [plaintiff] alleges is intrinsic. She claims she was lied to about IHOP's intentions with regard to the settlement terms, and had the opportunity to negotiate terms that would have been more favorable (e.g., not dependent on IHOP's intent) or to reject the settlement altogether. She was not prevented from participating in the proceedings." (*Navarro, supra*, 134 Cal.App.4th at p. 844.)

The same holds true here. The Tribe was not deprived of participating in any proceedings or having its day in court. Instead, it accepted a verbal offer of settlement and reserved its right to refile the lawsuit. (*Silberg, supra*, 50 Cal.3d at p. 214 ["For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings"].) Moreover, even where extrinsic fraud occurs, the remedy is to set aside the affected judgment. (*Navarro, supra*, 134 Cal.App.4th at p. 845; cf. *Home, supra,* 96 Cal.App.4th at p. 26 [explaining that where civil judgment is procured by extrinsic fraud, the normal remedy is to seek equitable relief from the judgment, not to sue in tort].) Here, as noted

21

in our factual background, the Tribe sought to reopen the prior litigation, but did so in a procedurally defective manner. Regardless, the Tribe's perception of "extrinsic fraud" is contrary to the caselaw which holds statements made during settlement negotiations cannot form the basis for tort actions—including fraud—due to the litigation privilege. (See *Navarro*, *supra*, 134 Cal.App.4th at p. 845 [so noting].)

Accordingly, we conclude the Tribe's cause of action for fraud is barred by the litigation privilege, and reverse the trial court's judgment in favor of the Tribe on this cause of action.[10]

## II. *The Breach of Oral Settlement Agreement/Contract Claim*

The Trial court found the Tribe "established that there was a settlement agreement between [the Tribe] and Defendant Barnum, whereby [the Tribe] agreed to dismiss its lawsuit against Barnum in exchange for Barnum's agreement to pay [the Tribe] the proceeds of the sale of the Furness Property after calculating and paying any related taxes."

On appeal, defendant does not argue that the elements of the breach of contract/settlement agreement claim were not met. Instead,

---

[10] Defendant Barnum does not argue that the litigation privilege also bars the Tribe's non-tort claim for breach of settlement agreement. (See *Navellier, supra,* 106 Cal.App.4th at p. 773 [noting that the litigation privilege "is generally described as one that precludes liability in tort, not liability for breach of contract" and concluding, in action arising from defendant's breach of a release agreement reached in a prior lawsuit, that the litigation privilege did not bar separate claim for breach of contract, and we discern no reason to so conclude].)

she argues that the statute of frauds bars the claim because the contract involved the sale of property.[11] We disagree.

A. *The Statute of Frauds Does Not Bar the Claim*

First, although defendant states that the trial court did not make any findings or rulings on her statute of frauds defense, the trial court stated the following at the outset of its statement of decision: "[The Tribe] in this case is seeking the funds from the Defendant's sale of the property. [The Tribe] is not seeking legal title. Defendant Barnum already sold the property to a third party. This case concerns false promises made by Defendant Barnum and her failure to turn over the proceeds of any property sale to the religious organization, the Twelve Tribes, as she had promised."[12]

Unless a writing is required by the statute of frauds, oral settlement agreements are enforceable in the same manner as oral agreements in general. (*Gorman v. Holte* (1985) 164 Cal.App.3d 984,

---

[11] Barnum also argues that the claim is barred because she was acting on behalf of a disclosed principal (Grafrath) and the statute of frauds requires that a promise to answer for the debt of another must be in writing. (Civ. Code, § 1624, subd. (a)(2).) We address defendant's agency argument in the next section. (See, *post*, Discussion, Section III.)

[12] We note that notwithstanding the trial court's prefatory statement, the court's statement of decision contains several statements and/or findings that the Tribe was the "100 % equitable owner" of the property, while Wilhelm Grafrath was merely the "strawman" or "bare" title holder of the property. Whether the Tribe had a viable equitable interest in the property, however, was not squarely before the court in the instant action and we express no opinion on that issue.

988–989.)  Civil Code section 1624, subdivision (a), states:  "The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent:  [¶]  . . .  [¶]  (3)  An agreement . . . for the sale of real property, or of an interest therein."  As our Supreme Court has observed, "We must, of course, apply the California statute of frauds to a situation which is precisely covered by the language of the statute.  If the extent of coverage is unclear, however, we know of no policy reasons which compel a resolution of the ambiguity in favor of its wide application." (*Sunset-Sternau Food Co. v. Bonzi* (1964) 60 Cal.2d 834, 838 (*Sunset-Sternau*).)

Here, the agreement between defendant and the Tribe was not for the "sale" of the property, or for an interest therein.  Indeed, the 2014 lawsuit filed by the Tribe expressly alleged that Barnum had refused their demands to halt the sale of the property.  Nor did Barnum agree to transfer any interest in the property to the Tribe.  Instead, the agreement here was that Barnum would give the Tribe the net cash proceeds she obtained from the sale, in exchange for their dismissal of the lawsuit.  Thus, in the strictest sense, the agreement here is not covered by the language of the statute.  (*Sunset-Sternau, supra*, 60 Cal.2d at p. 838.)

The only cases cited by defendant Barnum in her terse argument on the issue are *Texaco, Inc. v. Ponsoldt* (9th Cir. 1991) 939 F.2d 794 (*Texaco, Inc.*) and *Nicholson v. Barab* (1991) 233 Cal.App.3d 1671 (*Nicholson*).  *Texaco, Inc.*, however, involved a settlement agreement between a buyer and seller of real property, wherein the buyer agreed

24

to close escrow on the property. (*Texaco Inc.*, *supra*, 939 F.2d at pp. 800–801.) *Nicholson* also involved an agreement between a potential buyer and seller—albeit a more complex one—wherein the parties agreed to cancel the existing escrow, to have the buyer purchase the property from defendants for a specified amount, and then resell it for no less than a specified amount in order to share in the proceeds with a second buyer involved in the litigation. (*Id.* at pp. 1676–1682.) In finding the settlement agreement barred by the statute of frauds, the *Nicholson* court stated: "[I]t is clear that the settlement agreement is an agreement for the sale of real property *and not merely an agreement to pay damages to settle a lawsuit involving real property*." (*Id.* at p. 1683, italics added.) Here, the agreement was closer to the latter in that it did not call for the transfer of property between the two settling parties, but solely provided for the payment of cash proceeds to settle the lawsuit.

## B.  *The Doctrine of Estoppel Provides an Alternate Basis Upon Which to Affirm the Judgment*

The doctrine of estoppel, to preclude reliance on the statute of frauds, has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. (*Monarco v. Lo Greco* (1950) 35 Cal.2d 621, 623.) Thus, estoppel may be applied where necessary to prevent either unconscionable injury or unjust enrichment (*ibid.*) and justify the imposition of a constructive trust. (*Mazzera v. Wolf* (1947) 30 Cal.2d

25

531, 535.) In light of the trial court's findings on the issue of fraud, and imposition of a constructive trust to avoid unjust enrichment, we find this doctrine to be an additional ground justifying affirmance of the trial court's finding in favor of the Tribe on its contract cause of action.[13]

III. *Agency and Indispensable Party*

Barnum contends the trial court erred in holding Barnum liable for breach of the oral settlement agreement because Barnum was functioning solely as Grafrath's agent, and an agent cannot be held liable for a contract executed on behalf of his or her principal. Barnum further contends the trial court committed reversible error by failing to dismiss the action for want of joinder of Grafrath, an indispensable party to the action. We find no merit in either contention.[14]

First, "[t]he existence of an agency relationship and the extent of the authority of an agent are questions of fact[,]" (*California Viking*

---

[13]    In her reply brief, defendant Barnum states in passing that the prior court's dismissal of the oral contract claim in the TAC "constitutes res judicata, which should have barred the ressurection [*sic*] of the [breach of oral settlement] cause of action." (Cf. fn. 8, *ante*.) Defendant did not argue this issue in her opening brief, and we do not consider matters raised for the first time in the reply brief. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335.)

[14]    In her opening brief, Barnum also argues that the statute of frauds prevents her from answering for the debt of another, absent a written agreement, and that the question of whether there was an intention to keep the promises made to the Tribe, was solely within Grafrath's control. Our resolution of the agency/indispensable party issues raised above is equally dispositive of these arguments.

*Sprinkler Co. v. Pacific Indem. Co.* (1963) 213 Cal.App.2d 844, 850), reviewed for substantial evidence on appeal (*Inglewood Teachers Assn. v. Public Employment Relations Bd.* (1991) 227 Cal.App.3d 767, 780–781). Second, "[w]hether a party is necessary and/or indispensable is a matter of trial court discretion in which the court weighs 'factors of practical realities and other considerations.'" (*Hayes v. State Dept. of Developmental Services* (2006) 138 Cal.App.4th 1523, 1529; *Bianka M. v. Superior Court* (2018) 5 Cal.5th 1004, 1022–1023.)

Here, Barnum's agency argument is solely premised on the fact that Grafrath executed powers of attorney granting Barnum authority to conduct transactions involving his property. Similarly, Barnum's contention that Grafrath was an indispensable party to this action, is premised on the assertion that Grafrath was the legal title holder, and thus sole principal, in any transactions related to the property. However, the powers of attorney and Grafrath's status as legal title holder are not dispositive of the issues.

In concluding that Grafrath was not an indispensable party, the trial court pointed out that the "sole[]" question before it "involve[d] . . . *Barnum's* promise to pay the proceeds to [the Tribe]."[15] (Italics added.) To the extent Barnum argues that there was no additional determination that she exceeded her authority under any of the powers of attorney, we disagree.

---

[15] To the extent Barnum criticizes additional reasons put forth in the trial court's order, we review the correctness of the court's decision, not its rationale. (See *Gilbert v. State of California* (1990) 218 Cal.App.3d 234, 240, fn. 4.)

First, the trial court here found Barnum personally liable on both causes of action, and imposed a constructive trust on the property into which she funneled proceeds of the property sale. Second, the trial court made explicit findings that: (1) Barnum converted all of the proceeds of the sale "for herself only and her own use," despite the fact that she had quitclaimed any legal interest in the property in 1997; (2) that she rejected a check made out to Grafrath by escrow and directed them to instead wire the funds into her bank account;[16] (3) that she made the promises to the Tribe so that they would dismiss the lawsuit and she could quickly close escrow to pay delinquent taxes on two properties she owned that were facing imminent foreclosure; (4) that the same day she received the funds from escrow she wrote checks to pay the property taxes on her two properties set for tax collector auctions and (5) that she rapidly sold the property for less than market value, so that she could "pocket the proceeds."

In making these findings, the trial court essentially found that Barnum's actions vis-à-vis the oral promises/settlement agreement were undertaken for her own personal benefit. In the absence of any specific and controlling evidence to the contrary, this ultimate finding is supported by substantial evidence. (Cf. *Lee v. Helmco, Inc.* (1962) 199 Cal.App.2d 820, 833 ["'[T]he testimony of an agent at the trial is

---

[16] Although the bank account was in in the name of both Barnum and Grafrath, the trial court pointed out that Barnum admitted she never transferred any of the funds to Grafrath. The court also noted that Barnum could not point to a single instance in which she had either sent Grafrath money from this "joint account" or in which Grafrath had himself withdrawn any money from that account.

admissible to prove either the fact of agency or the extent of the authority'"]; *Dandini v. Dandini* (1947) 82 Cal.App.2d 263, 269 ["If a finding made is supported by competent and substantial evidence it must stand.  It is not enough to say that equally competent and substantial evidence in the record would just as adequately, or from a consideration of mere lifeless words even more adequately, support a contrary finding"].)

Similarly, the trial court's finding that Barnum was personally liable to the Tribe for the promises made, along with an imposition of a constructive trust upon properties into which she funneled the proceeds of the sale, leads us to conclude that the trial court's non-joinder/indispensable party finding was an appropriate exercise of its discretion.  (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 794 [in determining whether a party is necessary, and whether "complete relief" can be granted in the absence of joinder, key question is whether relief can be granted between the extant parties, not as between a party and the absent person whose joinder is sought]; see also *County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1149 [in determining whether the action should proceed among the parties before it "no factor is determinative or necessarily more important than another"].)[17]

---

[17]     Towards the end of her opening brief, in a two-paragraph argument, Barnum also asserts that the trial court committed "legal error" in its decision because California Evidence Code section 1152, subdivision (a) precludes the use of offers to settle or compromise as evidence of a party's liability.  We deem any argument on this point waived.

## IV. *Punitive Damages*

Because the litigation privilege bars the Tribe's promissory fraud claim, the Tribe was not entitled to damages on that cause of action. However, the promissory fraud and breach of contract awards were duplicative and since we uphold the latter claim on appeal, the award of $375,000 cannot be disturbed. We must, however, reverse the $180,000 in punitive damages awarded to the Tribe.

Punitive damages are permissible only in connection with "an action for the breach of an obligation not arising from [a] contract." (Civ. Code, § 3294, subd. (a); *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1286.) In this case, the only viable theory of liability was premised on a contract. As such, punitive damages are not available. (Cf. *Vivian v. Labrucherie* (2013) 214 Cal.App.4th 267, 272

---

First, evidentiary rulings are reviewed for abuse of discretion (*Evans v. Gordon* (2019) 41 Cal.App.5th 1094, 1102), and second, Evidence Code section 353 bars relief for the admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (Evid. Code, § 353, subd. (a); *Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1146, fn. 5.)

Here, Barnum has failed to point to any part of the record showing that she raised this evidentiary objection in the trial court. (See *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115 ["It is the duty of counsel to refer the reviewing court to the portion of the record which supports appellant's contentions on appeal" and "[i]f no citation 'is furnished on a particular point, the court may treat it as waived'"].)

[equating breach of contract claim with breach of settlement agreement].)[18]

## DISPOSITION

The judgment is reversed with respect to the promissory fraud claim and the award of punitive damages.  The judgment is affirmed in all other respects.

The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, Acting P. J.

We concur:

COLLINS, J.

CURREY, J.

---

[18]    In its motion to amend their complaint to add the breach of settlement claim, the Tribe expressly stated that the proof of such an action "is the same as proving a breach of oral contract" and cited to CACI No. 303 (Breach of Contract) to set out the elements.